970 So.2d 511 (2007)
STATE of Louisiana
v.
Robert Glen COLEMAN.
No. 2006-KA-0518.
Supreme Court of Louisiana.
November 2, 2007.
Rehearing Denied January 7, 2008.
*512 Capital Appeals Project, Jelpi Pierre Picou, Jr., Letty S. DiGiulio, for appellant.
Charles C. Foti, Jr., Attorney General, Paul Carmouche, District Attorney, Catherine Marion Estopinal, Hugo A. Holland, Jr., Edwin Blewer, III, Lea R. Hall, Jr., Assistant District Attorneys, for appellee.
JOHNSON, Justice.
The defendant now brings his direct appeal of his conviction and sentence to this Court pursuant to La. Const. art. 5, § 5 D[1] raising 36 assignments of error. We find merit as to one of the assignments raised by the defendant for the reasons set forth more fully below. Therefore, we reverse and vacate the conviction and death sentence, and remand for a new trial.

PROCEDURAL HISTORY
On February 14, 2003, defendant Robert Glen Coleman was indicted by a grand jury for first degree murder of Julian L. Brandon, Jr., in violation of LSA-R.S. 14:30, and attempted first degree murder of Alice Brandon, in violation of LSA-R.S. 14:27 and LSA-R.S. 14:30. On January 21, 2005, the State filed an amended indictment to first degree murder of Julian L. Brandon, Jr., in violation of LSA-R.S. 14:30.
On February 17, 2005, the jury unanimously returned a verdict of guilty as charged of first degree murder of Mr. Brandon. The penalty phase began the *513 following day. On February 19, 2006, the jury returned a death verdict, finding all four aggravating circumstances urged by the State, namely that the offender was engaged in the perpetration or attempted perpetration of an armed robbery, LSA-C.Cr.P. art. 905.4(A)(1); that the victim was older than 65 years of age, LSA-C.Cr.P. art. 905.4(A)(10); that the offender created a risk of death or great bodily harm to more than one person, LSA-C.Cr.P. art. 905.4(A)(4); and that the offender had previously been convicted of armed robbery, LSA-C.Cr.P. art. 905.4(A)(3). On April 6, 2005, the judge denied defendant's motion for new trial, and assigned reasons. Thereafter, the judge imposed the sentence of death in accordance with the jury's verdict.

LAW AND DISCUSSION
Defendant claims that the trial court erred in ruling that the defense failed to establish a prima facie case of discrimination under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Specifically, defendant points to peremptory challenges exercised by the State against African-American jurors: Mason Miller, Sylvia Lampkin, Eddie Jordan, Daphne Smallwood, and Kim Ross[2].
In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) the Supreme Court held that an equal protection violation occurs when a party exercises a peremptory challenge to exclude a prospective juror on the basis of race. According to Batson, a defendant must establish a prima facie case of discrimination by showing facts and relevant circumstances which raise an inference that the prosecutor used his peremptory challenges to exclude potential jurors on account of race. The burden then shifts to the State to come forward with a race-neutral explanation. If a race-neutral explanation is tendered, the trial court then must decide, in step three, whether the defendant has proven purposeful racial discrimination. State v. Harris, 01-0408 (La.6/21/02), 820 So.2d 471; Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam) (citations omitted); State v. Collier, 553 So.2d 815, 818 (La.1989); Hernandez v. New York, 500 U.S. 352, 358-59, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).
In this case, the defendant based his Batson challenge on the fact that the prosecution used six of its eight peremptory challenges to strike African-American prospective jurors. The defendant alleged that the prosecution intentionally struck these African-American prospective jurors solely on the basis of their race. In response to the defendant's assertion, the prosecution argued that a "generic statement" as to how many black and white prospective jurors were stricken does not satisfy the first prong of Batson's three step analysis: a prima facie showing of discrimination. Nevertheless, to counter defendant's argument that there was sufficient evidence to establish a prima facie case of discrimination, the prosecution proffered an explanation for the exercise of each peremptory strike.
At the close of argument, the trial court found that the defendant failed to make a prima facie showing of discrimination so as to satisfy the first step of the Batson analysis. Although the court opined that the lack of a prima facie showing did not require it to rule on the reasons proffered by the prosecution for the exercise of its challenges, the court nevertheless proceeded *514 to rule that the prosecution offered race neutral reasons for the exercise of each of its challenges.
Ordinarily, a trial court's conclusion that the defendant failed to satisfy his or her initial burden of establishing a prima facie case of discrimination would end the inquiry. State v. Allen, 03-2418, p. 17-19 (La.6/29/05), 913 So.2d 788, 802-803. However, in this case, the trial court accepted the prosecutor's proffered race neutral reasons for the exercise of the peremptory strikes, and ruled on them, ultimately finding "no Batson issue." Under these circumstances, we find that the rule announced in Hernandez v. New York, supra., and adopted in State v. Green, 94-0887, p. 25 (La.5/22/95), 655 So.2d 272, 288, applies: "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot."
Our review of the record convinces us that the State's proffered reasons for the exercise of its peremptory challenges merit careful scrutiny, especially as regards prospective juror Mason Miller.
The State and the Defense both used the State's power point presentation to allow prospective jurors to explain their position on the death penalty. The State's power point presented the following choices:
(A-1)-Death is proper in all cases of first degree murder.
(B-2)Death is the proper penalty, unless something convinces you to give life.
(C-3) Life is the proper penalty, unless something convinces you to give the death penalty.
(D-4)-Life, but in exceptional circumstances you would vote for the death penalty.
(E-5)Life in all cases; would never vote for the death penalty.
The State and the Defense used both A-E, and 1-5 interchangeably in the power point presentation.
Mason Miller
Mason Miller, an African-American male, was tentatively accepted as a juror but subsequently dismissed when the State used its third peremptory challenge to back strike him. In defending its use of the peremptory challenge to exclude the prospective juror, the State offered:
The State did that because it needed to check information concerning Mr. Miller based on his employment. He advised he was a captain with the fire department in Bossier City. Mr. Miller has filed a lawsuit against the city alleging institutional discrimination. Defense counsel voir dired on the race issue.[3] There is a black defendant in this case. There are white victims. He said if he was 100 percent on the evidence, the death penalty was okay. With his body language, the State believes he is way passed(sic) where he self-described himself as a C but is actually a D or number four.
After entertaining the State's explanation, the trial court reiterated that the defendant had failed to satisfy the first step of the three-step Batson analysis, i.e., a prima facie showing of discrimination. However, the court then proceeded to rule *515 on the State's articulated reasons for the exclusion of this prospective juror.
To be facially valid under Batson, the State's articulated reasons need not be persuasive or even plausible. Unless a discriminatory intent is inherent in the State's explanation, the reason offered will be deemed race-neutral. Purkett v. Elem, 514 U.S. at 767-768, 115 S.Ct. at 1770-1771. In this case, the trial court accepted the State's articulated reasons as racially neutral and overruled the Batson objection, finding "no problem" with the articulated reasons for striking Miller. We disagree with this conclusion, finding that the State's proffered explanation is not facially race-neutral.
A review of the reasons articulated in the record reveals that the State initially rested its challenge of Miller on a lawsuit that it apparently learned about independently. According to the State, Miller had filed a lawsuit against Bossier City alleging "institutional discrimination." The prosecutor did not elaborate or attempt to explain what this involved, or what was meant by "institutional discrimination." As a general proposition, a prospective juror's preoccupation with ongoing litigation has been deemed a race-neutral explanation supporting a peremptory strike. United States v. Copeland, 321 F.3d 582, 599-600 (6th Cir.2003) (Hispanic juror involved in a personal injury lawsuit requiring attendance at settlement conference during trial excused without violating Batson); Harper v. State, 91-0699 (Miss.4/7/94), 635 So.2d 864, 867-69 (Fact that African-American prospective juror may have been hostile to the state due to her pending sex discrimination lawsuit was race-neutral reason supporting peremptory strike).
However, in this case, there was no attempt by the State to explain how bias might operate from the mere existence of this lawsuit. Miller was never questioned about the impact the lawsuit would have on his ability to serve as a juror. Moreover, the prosecutor's very next statement following the mention of the "institutional discrimination" lawsuit interjected the issue of race, undercutting the acceptable "ongoing litigation" explanation and suggesting that the reasons for striking Miller were in fact race-related. The prosecutor stated: "Defense counsel voir dired on the race issue. There is a black defendant in this case. There are white victims." The prosecutor's statement explicitly places race at issue, without any attempt to explain or justify why race might be a relevant consideration in this instance.
The only other reason proffered by the State for striking Miller was his body language as he responded to questions probing his attitude toward capital punishment. Body language has been held to constitute a valid, race-neutral basis for defeating a Batson claim. United States v. Bentley-Smith, 2 F.3d 1368, 1374 (5th Cir.1993); State v. Seals, 95-0305, p. 8 (La.11/25/96), 684 So.2d 368, 274-75, reversed on other grounds, 00-2738 (La.10/25/02), 831 So.2d 828 (noting reasons found acceptable include body language, lack of eye contact, juror inattention and juror "not too bright"); State v. Aubrey, 609 So.2d 1183, 1187 (La.App. 3 Cir.1992) (venire woman maintained excessive eye contact with one of the defendants). However, while Miller's voir dire responses, amplified by the State's perception of his body language, tended to favor life imprisonment over the death penalty, this explanation for striking Miller, when examined in the context of the State's previous overt reference to race, cannot compensate for the specific racial reference. Once an inappropriate explanation invoking racial considerations is made, a subsequent, valid reason for exercising the peremptory *516 challenge cannot purge the racial taint.
In this case, the State explicitly placed race at issue when it stated that "defense counsel voir dired on the race issue. There is a black defendant in this case. There are white victims." By specifically referencing the race of the defendant and the victim, the prosecutor clearly and unmistakably indicated that the decision to strike Miller was motivated by this prospective juror's race. Yet, there was no further explanation as to why race might be a relevant consideration in this case. This court is simply left to speculate as to what was meant by the oblique reference to an "institutional discrimination" lawsuit and the specific reference to race. As the U.S. Supreme Court recently confirmed:
[T]he rule in Batson provides an opportunity to the prosecutor to give the reason for striking the juror, and it requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it. It is true that peremptories are often the subjects of instinct, and it can sometimes be hard to say what the reason is. But when illegitimate grounds like race are at issue, a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives.
Miller-El v. Dretke, 545 U.S. 231, 251-252, 125 S.Ct. 2317, 2331-2332, 162 L.Ed.2d 196 (2005) (citations omitted); See also: State v. Harris, 01-0408 (La.6/21/02), 820 So.2d 471 (State consciously took color into account in excluding a prospective juror because he was the "only black male on the panel with no children").
Here, the explicit interjection of race, without further explanation, renders implausible any explanation other than that the decision to strike this prospective juror was not race-neutral, but was based specifically on the juror's race, in violation of the fundamental precepts of Batson and its progeny.
We find that the State consciously took race into account in its exclusion of Mr. Miller, thereby violating defendant's constitutional right to equal protection. Striking a single juror can constitute an equal protection violation. State v. Collier, 553 So.2d 815, 819 (La.1989); United States v. Clemons, 843 F.2d 741 (3rd Cir. 1988) (striking a single black juror could constitute a prima facie case even when blacks ultimately sit on the panel and even when valid reasons exist for striking other blacks); United States v. David, 803 F.2d 1567, 1571 (11th Cir.1986) ("the striking of one black juror for a racial reason violates the Equal Protection Clause"); Fleming v. Kemp, 794 F.2d 1478, 1483 (11th Cir.1986) ("nothing in Batson compels the . . . conclusion that constitutional guarantees are never abridged if all black jurors but one or two are struck because of their race"). A juror is entitled to be evaluated for service on a jury without reference to race. That fundamental guarantee is violated when the State consciously takes race into account in excluding a juror from service. In State v. Harris, supra, the inappropriate invocation of race in excusing one juror results in the exclusion of one juror too many. While, ultimately, there might exist some rational basis for the State's decision to strike Mr. Miller, no such reason has been proffered in this case, and we are left to speculate as to a motive on the State's part that might pass Batson scrutiny.

CONCLUSION
After careful review of the record, we find that the State's articulated reasons with respect to the peremptory strike of prospective juror, Mason Miller was entirely pretextual and inadequate. We conclude *517 that the manner in which the State exercised its peremptory challenges in this case, based on race, resulted in a violation of defendant's constitutional rights and find this error raises serious federal constitutional equal protection issues affecting the rights of both the defendant and the excused venire-member. This error is a structural one, affecting the framework within which the trial proceeded. Thus, we find that the defendant is entitled to a new trial. As we find this error alone requires a reversal of the conviction and sentence, we pretermit the remaining assignments of error.

DECREE
For the reasons assigned herein, we reverse the defendant's conviction and death sentence, and remand for a new trial.
REVERSED AND REMANDED FOR NEW TRIAL.
KIMBALL and VICTORY, JJ., dissent for reasons assigned by KNOLL.
KNOLL, J., dissents and assigns reasons.
KNOLL, Justice, dissenting.
The majority reverses and vacates the conviction and death sentence of defendant, Robert Glen Coleman, for the first-degree murder of Julian L. Brandon, a 70-year-old retired Baptist preacher, while in perpetration of an armed robbery, finding the district court erred in ruling that the defense failed to establish a prima facie case of discrimination under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), specifically as to potential juror Mason Miller. For the following reasons, I respectfully dissent.
As discussed by the majority, it is apparent that the State's implication of race in its reasons for striking Mason Miller has, in the majority's view, tainted the State's otherwise race-neutral reasons for the strike. In response to the defendant's Batson challenge, the State explained:
I think it's very clear from the State's challenges for cause all the way through this process as well as the State's challenges peremptorily, they were used in regard to those folks who especially with cause regardless of race, we're looking to those who could follow the law.
The State wasn't just challenging for cause black people. The State was challenging white people and black people that it believed couldn't follow the law for whatever reason. The State was not acting in any racially motivated way.
The State's first peremptory challenge was exercised to strike a white female due to her proclivity to believe defendants, her legal experience as an attorney with defense counsel, and because she did not care for the death penalty and thought it should be abolished. The State's third challenge was exercised against Mason Miller, a black male, with the State explaining:
The State used a back strike against Mr. Miller. The State did that because it needed to check information concerning Mr. Miller based on his employment. He advised he was a captain with the fire department in Bossier City. Mr. Miller has filed a lawsuit against the city alleging institutional discrimination. Defense counsel voir dired on the race issue.[1] There is a black defendant in *518 this case. There are white victims. He said if he was 100 percent on the evidence, the death penalty may be okay. With his body language, the State believes he is way passed where he self-described himself as a C but is actually a D or number four.
"Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging . . . jurors" within an arguably targeted class, and the prosecutor "must give a clear and reasonably specific explanation of his legitimate reasons for exercising the challenge." Batson, 476 U.S. at 97-98, 106 S.Ct. 1712. "But when illegitimate grounds like race are in issue, a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives." Miller-El v. Dretke, 545 U.S. 231, 252, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005). In this case, the State reasoned, in pertinent part, to which the majority takes exception:
Mr. Miller has filed a lawsuit against the city alleging institutional discrimination. Defense counsel voir dired on the race issue. There is a black defendant in this case. There are white victims.
As apparent from the State's reasoning, the State was concerned with this juror's sensitivity to discrimination, as evident in his filing a discrimination suit against his employer. The interjection of race on the State's part was to illustrate its concern with the potential impartiality or neutrality of this juror, not as to its racial motivation for striking the juror.
Neither Batson nor Miller-El require the State's reasons to be perfect, just that they give a clear and reasonably specific explanation for exercising the challenge. In this case, the State's reasons, in my view, do provide a clear and reasonably specific explanation, i.e., the sensitivity of this juror to discrimination, which the district court, in its great discretion, found plausible. Moreover, even the defendant failed to raise the issue now raised by this Court, even though Miller was included in the general Batson claim, which further indicates to me the plausibility of the State's reason.
The majority's rejection of the State's explanation in this case, in my view, raises the bar from a clear and reasonably specific explanation to a perfect answer in order to uphold a race-neutral reason. To split hairs in determining if reasonably clear can be clearer is going to the extreme and is not required. This issue is already very litigious and would effectively do away with a reasonably clear explanation to require a perfect answer. In my view, this approach is going far afield from what is required to uphold a race-neutral explanation and would effectively render any otherwise valid race-neutral reason espoused by either side constitutionally invalid by the mere mention of race.
Further, the State clearly had other longstanding race-neutral reasons supporting its striking Mr. Miller. A prospective juror's preoccupation with ongoing litigation has been deemed a race-neutral explanation for supporting a peremptory strike, *519 in this case Mr. Miller's on-going discrimination suit against his employer.[2]See Harper v. State, 91-0699 (Miss.4/7/94), 635 So.2d 864, 867-69 (African-American prospective juror may have been hostile to the state due to her pending sex discrimination lawsuit; peremptory challenge supported by race-neutral reason). Body language has also been held to constitute a valid, race-neutral basis defeating a Batson claim, and Mr. Miller's voir dire responses, amplified by the State's perception of his body language, tended to favor life imprisonment over the death penalty. See State v. Seals, 95-0305, p. 8 (La.11/25/96), 684 So.2d 368, 374-75, rev'd on other grounds, 00-2738 (La.10/25/02), 831 So.2d 828 (noting reasons found acceptable include body language, lack of eye contact, the failure to make eye contact, juror inattention, and juror "not too bright").
After reviewing the entire voir dire transcript, I have given careful scrutiny to the voir dire of prospective juror Mr. Miller, and because I agree with the district court that the State did not strike Mr. Miller on the basis of race, I would defer to the district court's sound judgment.
NOTES
[1] La. Const. art. 5, § 5(D) provides in pertinent part: ". . . a case shall be appealable to the Supreme Court if . . . (2) the defendant has been convicted of a capital offense and a penalty of death actually has been imposed."
[2] Also, in panel five was a prospective juror named Erica Ross, an African American. There is some confusion in the transcript, when reference is made to "Ms. Ross". It is unclear whether the reference is to Kimberly or Erica Ross.
[3] A review of the voir dire of the entire panel from which Miller was struck indicates that defense counsel did not voir dire on race.
[1] Admittedly, a review of the voir dire of the entire panels from which Mr. Miller was struck indicates that defense counsel did not pose specific questions to either of Mr. Miller's panels in either the first or second round of voir dire with respect to the race of the instant defendant vis-a-vis the race of the victims. However, the first panel in the second round of voir dire to which Mr. Miller was a member did witness a verbal confrontation between defense counsel, Mr. Gold, and a prospective juror, Holly Jacobs, in which Mr. Gold shouted at Jacobs and called her a racist. The judge promptly excused the panel and reprimanded defense counsel, who in the judge's words levied a charge of racism against a prospective juror that defense counsel did not even know in a courtroom in front of all the other fellow jurors. Although defense counsel did apologize, the issue of race was brought to the forefront in this voir dire in a powerful way by defense counsel's interaction with Ms. Jacobs.
[2] In further support of the State's position in this case, I take judicial notice of the allegations set forth by Mr. Miller against his employer in his petition filed in Docket No. 108233 in the 26th JDC for the Parish of Bossier on January 25, 2002, which arise from claims of discrimination against Mr. Miller and fellow African-American employees on the basis of race.