NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-428

STATE OF LOUISIANA

VERSUS

RAYMOND J. JACKSON

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 03-K-4552-B
HONORABLE ELLIS J. DAIGLE, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, James T. Genovese, and Chris J. Roy, Sr.,*
Judges.

AFFIRMED.

James Edward Beal
Louisiana Appellate Project
P. O. Box 307
Jonesboro, LA 71251-0307
(318) 259-2391
Counsel for Defendant:
Raymond J. Jackson

_____

*Honorable Chris J. Roy, Sr., participated in this decision by appointment of the Louisiana
Supreme Court as Judge Pro Tempore.

**Earl B. Taylor**
**District Attorney**
**Jennifer Ardoin**
**Assistant District Attorney**
**27th Judicial District Court**
**P. O. Drawer 1968**
**Opelousas, LA 70571-1968**
**(337) 948-3041**
**Counsels for Appellee:**
**State of Louisiana**

**SAUNDERS, Judge.**

The Defendant, Raymond J. Jackson, was charged by bill of information filed on January 8, 2004, with possession of more than twenty-eight grams but less than two hundred grams of cocaine, a violation of La.R.S. 40:967. The Defendant entered a written plea of not guilty on January 9, 2004. Trial by jury commenced on October 17, 2005, and the trial court subsequently declared a mistrial.

On February 1, 2006, the State filed an amended bill of information charging the Defendant with possession with intent to distribute cocaine, a violation of La.R.S. 40:967. Trial by jury commenced on February 16, 2006, and the jury returned a verdict of guilty on the same date. On May 12, 2006, the Defendant was sentenced to ten years at hard labor, with the first two years to be served without benefit of probation, parole, or suspension of sentence. The Defendant filed a "Motion to Amend and/or Reconsider Sentence" on May 18, 2006. On December 15, 2006, a "Motion for Concurrent Sentences" was filed and denied.

A "Motion for Out of Time Appeal" was filed on February 21, 2007, and denied on February 26, 2007. The Defendant then filed an "Intention to Seek Appeal" on March 9, 2007. Therein, the Defendant sought to appeal the trial court's denial of his "Motion for Out of Time Appeal."

On May 31, 2007, an appellate record was lodged with this court. On June 1, 2007, this court issued a rule to show cause why the appeal should not be dismissed, as the judgment at issue was not appealable. The Defendant failed to submit a sufficient response. Therefore, on August 1, 2007, this court issued an opinion dismissing the Defendant's appeal. However, the Defendant was given thirty days to file a proper application for supervisory writs. See *State v. Jackson*, an unpublished opinion bearing docket numbers 07-677 and 07-634 (La.App. 3 Cir. 8/1/07).

The Defendant filed a writ application with this court on August 28, 2007. Therein, he alleged the trial court erred in denying his "Motion for Out of Time Appeal." On October 31, 2007, this court found the Defendant had alleged facts that, if proven, would entitle him to an out-of-time appeal and remanded the matter for an evidentiary hearing. *See State v. Jackson*, an unpublished writ opinion bearing docket number 07-1057 (La.App. 3 Cir. 10/31/07).

At a hearing held on February 8, 2008, the trial court denied the "Motion to Amend and/or Reconsider Sentence" filed on May 18, 2006, and gave the Defendant thirty days to file a motion for appeal. On March 3, 2008, the Defendant filed a "Motion and Order For Appeal."

The Defendant is now before this court asserting two assignments of error. Therein, the Defendant contends the trial court erred in allowing peremptory challenges by the State on the basis of race in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986), and erred in refusing to grant peremptory challenges to the defense as a result of a reverse *Batson* challenge by the State. We find that the issues presented by the Defendant either lack merit or should not be considered.

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find that there are no errors patent.

**ASSIGNMENT OF ERROR NO. 1:**

In his first assignment of error, the Defendant contends the trial court erred in allowing peremptory challenges by the State on the basis of race in violation of *Batson v. Kentucky* 476 U.S. 79, 106 S.Ct. 1712 (1986). We do not agree.

2

The fifth circuit recently discussed the state of the law regarding *Batson* challenges in *State v. Cheatteam*, 07-272, pp. 4-5 (La.App. 5 Cir. 5/27/08), 986 So.2d 738, 743-44, as follows:

> The Equal Protection Clause of the United States Constitution prohibits purposeful discrimination on the basis of race in the exercise of peremptory challenges. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In *Batson,* the United States Supreme Court established a three-step analysis to be applied when addressing a claim that peremptory challenges of a prospective juror were based on race. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. *Batson*, 106 S.Ct. at 1723. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. *Batson*, 106 S.Ct. at 1723-24. This second step "does not demand an explanation that is persuasive or even plausible," as long as the reason is not inherently discriminatory, it suffices. *Purkett v. Elem,* 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (per curiam). Third, the court must then determine whether the defendant has established purposeful discrimination. *Batson*, 106 S.Ct. at 1724. It is at this third step that implausible explanations offered by the prosecution "may (and probably will) be found to be pretexts for purposeful discrimination." *Purkett v. Elem*, 115 S.Ct. at 1771. "[A] trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous." *Snyder v. Louisiana*, ---U.S. ----, 128 S.Ct. 1203, 1207, 170 L.Ed.2d 175 (2008), *citing Hernandez v. New York*, 500 U.S. 352, 369, 111 S.Ct. 1859, 1871, 114 L.Ed.2d 395 (1991).
>
> The Supreme Court later affirmed and applied the three-part test in *Miller-El v. Dretke*, 545 U.S. 231, 239, 125 S.Ct. 2317, 2324, 162 L.Ed.2d 196 (2005), and, most recently, in *Snyder v. Louisiana*, *supra*. In *Miller-El*, the Supreme Court emphasized the trial judge's responsibility to assess the plausibility of the prosecutor's proffered race-neutral reason "in light of all evidence with a bearing on it." *Miller-El*, 125 S.Ct. at 2331. The Supreme Court further stated:
>
>> A *Batson* challenge does not call for a mere exercise in thinking up any rational basis. If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false.
>
> *Miller-El*, 125 S.Ct. at 2332.
>
> In its most recent case, *Snyder v. Louisiana*, *supra,* the Supreme

3

Court again emphasized that the plausibility of the prosecutor's explanation for a peremptory strike is to be carefully scrutinized by the trial judge under the third step of the *Batson* inquiry and noted that implausible reasons will fail a *Batson* challenge. In discussing the third step of the *Batson* inquiry in *Snyder,* the Supreme Court stressed the trial judge's pivotal role in determining the plausibility of the state's race-neutral explanation. The Supreme Court explained that the third step requires the trial court to evaluate the prosecutor's credibility by assessing "not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor." *Snyder v. Louisiana,* ---U.S. ----, 128 S.Ct. 1203, 1208, 170 L.Ed.2d 175 (2008).

Referencing its earlier decision in *Miller-El,* the Supreme Court again stressed that "all of the circumstances that bear upon the issue of racial animosity must be consulted" in determining whether the explanation given for the strike is convincingly race-neutral. *Snyder v. Louisiana, supra* at 1208. When the record does not support the prosecutor's proffered explanation or shows the proffered explanation to be implausible, there is an inference of discriminatory intent that sufficiently demonstrates a *Batson* violation. *Id.* at 1212.

During jury selection in the case at bar, the State attempted to use peremptory challenges to strike potential jurors Narcisse, Aaron, Amy, and Marks. Defense counsel subsequently made a *Batson* challenge, and the State responded as follows:

Well, while we're doing Batson, okay, let me just say that we have, and this is what I have struck is, Ms. Narcisse is a black female, Ms. Aaron is a black female, Mr. Jean Paul Amy is a white male, and Mr. Marks is a black male. As to Ms. Narcisse, Ms. Narcisse says she doesn't like to judge and doesn't want to judge. Ms. Aaron said she didn't understand the definition of "burden of proof beyond a reasonable doubt." Mr. Amy, he is twenty-three, single, and lives at home. My feeling is that an unmarried male who lives -- who does not live alone, has not learned the -- doesn't have the sense of responsibility necessary to serve on the jury. As to Mr. Marks, Mr. Marks says he could not judge.

The State then proceeded to point out that potential juror Rubien was a black female, and Chevis and Gray were black males. The trial court subsequently denied the *Batson* challenge and excused the potential jurors at issue.

4

"Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *State v. Coleman*, 06-518, p. 4 (La. 11/2/07), 970 So.2d 511, 514 (quoting *State v. Green*, 94-887 (La.5/22/95), 655 So.2d 272). The trial court asked the State to give reasons for its use of peremptory challenges. Thus, we find that the issue of whether the Defendant presented a prima facie showing that the State exercised a peremptory challenge on the basis of race is moot.

We will now address the State's explanation for its challenges. "The neutral explanation must be one which is clear, reasonably specific, legitimate, and related to the particular case at bar." *State v. Collier*, 553 So.2d 815, 820 (La.1989).

The Defendant asserts the State used peremptory challenges against jurors Narcisse and Aaron primarily because they were black. The Defendant discusses the State's challenge to potential juror Marks, but does not argue that he was excluded on the basis of race. Thus, we will not address the Defendant's discussion of Marks' answers to questions during voir dire.

The Defendant argues the reasons offered by the State for its use of peremptory challenges were not borne out by the testimony of the potential jurors. The Defendant asserts that when asked if we should be dealing with drugs in the courtroom, Narcisse stated, "we should be dealing with that in the courtroom because it's a controlled substance and they should be prosecuted if they have it in their possession." Narcisse further stated that she would be willing to follow the law and give the Defendant a fair trial. Narcisse subsequently stated she could judge, but she did not like to. The Defendant asserts that Narcisse said she could find him guilty if the State proved its

5

case, even knowing he would go to prison. However, the following pertinent exchange appears in the record on the pages cited by the Defendant:

> MR. DONALD RICHARD: Not at all. There's a foot between our eyes. Okay. So can I prove anything to you to an absolute certainty? The law recognizes it and it says, I must prove the defendant guilty beyond a reasonable doubt. I cannot prove him guilty to an absolutely [sic] certainty. I cannot prove him guilty beyond any doubt or a shadow of a doubt. Do you understand that, Ms. Narcisse?
>
> PROSPECTIVE JUROR NO. 131, BEVERLY NARCISSE: Yes.
>
> MR. DONALD RICHARD: Will you hold me to the burden of proof which the law says I have to meet but no greater even though you know that that young man will go to the penitentiary if he's found guilty?
>
> PROSPECTIVE JUROR NO. 131, BEVERLY NARCISSE: (NO response.)
>
> MR. DONALD RICHARD: You'll have to walk into the courtroom and you don't have to look at him specifically, but he's going to be here, you understand that?
>
> PROSPECTIVE JUROR NO. 131, BEVERLY NARCISSE: Yes.
>
> MR. DONALD RICHARD: That's harmful to you, isn't it? I can see the hurt in your eyes. You don't like that idea, do you?
>
> PROSPECTIVE JUROR NO. 131, BEVERLY NARCISSE: No.

The Defendant asserts it is clear that the primary reason for the State's exclusion of Narcisse was her race. The Defendant alleges that potential juror Debra Lafleur, who was white, stated it would bother her to find the Defendant guilty, just as Narcisse had, but she was not excused by the State.

The State notes that Narcisse did indicate she could find the Defendant guilty even knowing he could go to prison. However, Narcisse answered in the negative when asked if she liked the idea of sending the Defendant to prison. The State argues that the exchange quoted above was a sufficient reason for excluding Narcisse as a prospective juror. The State further points out that Lafleur was rehabilitated and

6

Narcisse was not. The State notes that after Lafleur indicated it would bother her to find the Defendant guilty, she stated she could do it.

The Defendant asserts that Aaron agreed that people should be prosecuted if they have a controlled dangerous substance in their possession. Aaron later stated that she would follow the law even if it did violence to her conscience. Aaron answered yes when asked, "[t]he world doesn't work unless somebody judges, does it?" Aaron also indicated she could judge if asked to do so. The Defendant further points out that Aaron said she would hold the State to its burden of proof and no more, and she could find the Defendant guilty even though she knew he would go to prison.

The State admits that Aaron did say she would hold the State to its burden of proof. However, during subsequent voir dire by defense counsel, Aaron specifically stated that she did not understand the meaning of the term burden of proof. The State notes that defense counsel attempted to explain the meaning of burden of proof, but Aaron was never again questioned regarding her understanding of the term after it was explained by defense counsel.

Based on the transcript of voir dire, we find that the State's reasons for the challenges were plausible. Its reasons for excluding Narcisse were race-neutral, as she stated she did not like to judge and did not like the idea of sending the Defendant to prison. Further, the State's reason for excluding Aaron was also race-neutral, as she stated she did not understand the term burden of proof.

Accordingly, we find that the trial court did not err in denying the Defendant's *Batson* challenges. As such, the trial court's ruling regarding the peremptory challenges at issue are sustained by this court.

**ASSIGNMENT OF ERROR NO. 2:**

In his second assignment of error, the Defendant contends the trial court erred by refusing to grant peremptory challenges to the defense as a result of a reverse *Batson* challenge by the State.

After defense counsel's *Batson* challenge was denied, she moved to peremptorily strike potential jurors Thomassie, Meche, Lafleur, and Ortego. At that time, the State made a reverse *Batson* challenge. The State then noted that Thomassie, Meche, and Ortego were the only three white males on the jury.

When asked to give reasons for the challenges, defense counsel stated the following:

"They said they don't believe in innocence as soon as you hit the door. They don't believe in innocence is what they said." Defense counsel additionally stated that the potential jurors at issue said that "when you're in court, you're guilty."

The trial court and defense counsel discussed potential juror Thomassie as follows:

> MS. DUNN-MALBROUGH: Okay. He said he doesn't believe in innocence and he heard him say he doesn't believe in innocence.
>
> THE DEFENDANT: The Court heard him say it.
>
> THE COURT: The Court heard him say that the presumption of innocence prior to getting into court is a lot less --
>
> MS. DUNN-MALBROUGH: Less, yes.
>
> THE COURT: -- than when he gets into Court, that when he gets into the Court, the presumption of innocence takes a lot more strength due to the fact that they have to listen to everything before it's determined whether he's guilty or innocent. That's what Mr. Thomassie stated as I recall.
>
> MR. DONALD RICHARD: That's what I recall, too.

8

THE COURT:  Is that what you recall?

MS. DUNN-MALBROUGH:  Uh-huh (YES), but if he -- if he's uncomfortable with it thinking that he's saying that but he's meaning that he's going to be not really looking at innocence, I mean, that's --

THE COURT:  It still needs to --

MS. DUNN-MALBROUGH:  But he articulated --

THE COURT:  -- verbalize -- correct, his --

MS. DUNN-MALBROUGH:  He articulated that he -- that from what he said, he gathered that he does not -- he's not going to put that presumption of innocence too high on his agenda, and that's the --

THE COURT:  That's not an acceptable response or excuse for excusing Mr. Thomassie.

MS. DUNN-MALBROUGH:  So we're going to leave Mr. Thomassie.

THE COURT:  Mr. Thomassie is going to be on the jury.

Defense counsel then stated that Meche said the same thing as Thomassie.  The trial court indicated it did not recall that.  Defense counsel then stated that Meche had previously been on a jury, and she did not want him to polarize the jury.  The trial court found that the reason given by defense counsel was not the same as the excuse the Defendant had articulated to the court.  The Defendant then stated Meche did not believe a person could prove his innocence.  The subsequent remarks resulted:

THE COURT:  That's correct.

MR. DONALD RICHARD:  That's right.  He absolutely said that.

THE COURT:  And I totally agree with him and I think your attorney will totally agree with it.  He cannot prove his innocence.  It's not him to prove his innocence. You, as the defendant, are not required to prove your innocence, that's what he said. It's the State to disprove or the State to prove that you are guilty, not you to prove that you are innocent.  Mr. Meche will remain on the jury.

9

Defense counsel again asserted that Meche indicated he had been on a jury that resulted in a hung jury, and she did not want Meche to polarize the jury. The trial court subsequently denied the reverse *Batson* challenge.

Although the trial court stated that it denied the reverse *Batson* challenge, Meche did in fact serve on the jury. Thus, the trial court must have granted the reverse *Batson* challenge and denied the Defendant's peremptory challenge.

Defense counsel and the trial court then discussed Ortego as follows:

MS. DUNN-MALBROUGH: Mr. Ortego is a Veteran and that was my hoping for him, he's a Veteran. He -- he said that he could follow the lead -- he would go, but he would follow the law which was not much to that, but personally, I just --

THE COURT: How is that systematic with the other two?

MS. DUNN-MALBROUGH: They are not.

THE COURT: They're not, but you had the -- the State has a Batson challenge as to --

MS. DUNN-MALBROUGH: My reasoning --

THE COURT: -- that being systematic.

MS. DUNN-MALBROUGH: My reasoning for him was that he is a Veteran and he's probably really going to go along with whatever anybody else says and he's going to be probably more lenient to the State than to the defense, and he's -- goes to war for the State, I mean, I just -- that was my reason for it. It didn't have anything to do with him being a white male, it had to do with him being a Veteran.

THE COURT: Okay. Mr. Richard, you had something?

The State then indicated that it was clear the Defendant did not want any white males on the jury. The State further indicated that Ortego stated he was a veteran, and, even if he disagreed with the law, he would follow it. Defense counsel then stated the following: "Also, he said, and my client just reminded me, that he would

probably go to war, you know, even if it was wrong, and in this case, no matter what Don Richard or the State puts forwards, he's probably going to go along with it."

The trial court and the State then pointed out that several other potential jurors, including Meche, Thomassie, and White, indicated they were veterans. The trial court subsequently ruled that Ortego would remain on the jury.

In brief to this court, the Defendant argues that he offered the race-neutral reason that Thomassie, Meche, and Ortego all had military backgrounds and were willing to go to war, even if that was the wrong thing to do as the basis for their exclusion from the jury venire. The Defendant asserts that he realized potential juror White was a black male who had a military record and moved to strike him as well. The Defendant asserts the trial court denied the challenges as to three white males with military backgrounds, but allowed the challenge as to the black male, White, with a military background.

As noted by the Defendant, during voir dire, Ortego was asked if he would go "to this particular war" and stated the following:

> The simple fact is that we have leaders that are giving us information of why we should be there at a particular time and place. We have to rely on our leaders. We might have our own judgment about it, but we still have people that's in charge of this country that we have to rely on, that's guidance. If called upon, I would go back again.

The Defendant asserts this statement showed a tendency to be easily swayed and should have been a valid reason for a peremptory challenge.

The State asserts that Thomassie's involvement in the military was not the motivation for defense counsel's attempt to exclude him from the jury. The State further asserts that the trial court first noted the fact that Thomassie had served in the military, and defense counsel never directly addressed Thomassie's military status.

Thus, the State argues it was clearly evident that defense counsel did not seek to strike Thomassie on the basis of his military status. The State also asserts that it is not evident in the record that defense counsel sought to challenge Meche based on his involvement in the military.

The State agrees with the Defendant's claim that Ortego was challenged due to his military involvement. However, the State asserts that involvement in the military does not indicate that one will go along with whatever someone else says. The State then notes that after Ortego said he would go to war to fight even if he thought it was the wrong thing to do, he stated he would follow the law in the Defendant's case even if he thought the law was horrible.

After reviewing the record, it is clear that the Defendant's counsel did not argue that Thomassie and Meche should have been excluded from the jury because of their military service at the time she gave reasons for the exercise of the peremptory challenges in the trial court. Thus, because the argument was not made in the trial court, this court will not consider the Defendant's claim that the trial court's ruling denying the use of peremptory challenges to exclude Thomassie and Meche on the basis of military service was erroneous. However, the court will address the Defendant's claim that the trial court improperly denied the peremptory challenge of Ortego.

First, this court must determine whether the State presented a prima facie showing that the Defendant exercised a peremptory challenge on the basis of race. We must then decide if the reasons given by the Defendant were race-neutral and, if so, whether the State established purposeful discrimination.

The trial court asked the Defendant to give reasons for its use of peremptory challenges and he did so. Thus, like in Assignment of Error No.1, the issue of whether the State presented a prima facie showing that the Defendant exercised a peremptory challenge on the basis of race is moot. *Coleman*, 970 So.2d 511.

Accordingly, we will address the Defendant's explanation for the challenge against Ortego. The Defendant claims that Ortego's military service was the basis for the use of the peremptory challenge. While the Defendant's attempt to excuse Ortego based on his military service may have been a race-neutral reason, given that other members of the jury venire, Thomassie and Meche, were not challenged on this basis, it is not plausible. *See Snyder*, 128 S.Ct. 1203.

Accordingly, the trial court's ruling regarding the peremptory challenge at issue is sustained by this court, as it is not clearly erroneous. The trial court did not err in granting the State's reverse *Batson* challenge and finding the Defendant could not use a peremptory challenge to exclude Ortego.

## CONCLUSION:

The Defendant's conviction is affirmed.

**AFFIRMED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules, Courts of Appeal.