CHARLES R. JONES, Judge.
 

 | jEric Maxwell appeals his conviction and sentence of ten (10) years for the offense of being a felon in possession of a firearm. We reverse, vacate Maxwell’s conviction and sentence, and remand for a new trial.
 

 The State charged Maxwell with one count of being a felon in possession of a firearm. He pled not guilty at his arraignment. At the conclusion of his jury trial, he was found guilty as charged by a 12 member jury panel. The district court ordered a presentence investigation, and on April 30, 2008, the district court sentenced Maxwell to serve ten (10) years, concurrent with any other sentence, with credit for time served, and recommended him for the Department of Corrections Impact Program, and for any other self-help programs. Maxwell filed an oral motion for appeal that day, and he filed a written motion for appeal on May 5, 2008, on which date it was granted.
 

 On the morning of June 17, 2007, at about 11 a.m., New Orleans Police Department Officer Samuel Dupre was on routine patrol in his marked police vehicle when he was flagged down by a woman who informed him of a parked Lexus on Canal Street in Orleans Parish. The informant stated there were 2 black males “ducked down” in the car and it seemed like they were hiding from |2someone. Based on this information, Officer Dupre proceeded to the location described by the informant and saw the vehicle and the two men she described.
 

 While parked about 20 feet away from the vehicle described, Officer Dupre witnessed the two men, Maxwell and another male, exit the Lexus and walk up to the Athletes Foot store located on Canal Street, peer through the window and return back to their vehicle. The two men reached under the seats of the vehicle to retrieve something and placed the item in their waste bands or pocket. Officer Dupre testified that because he was parked so far away, he could not confirm as to what the two males were retrieving from under the seat or where on their bodies they hid the item. The two males proceeded to walk back towards the Athletes Foot store. Officer Dupre further testified that the two males’ actions made him think that they were going to rob the shoe store because “they looked through the store, walked back to the vehicle to retrieve something that seemed like a gun from under the seat and then proceeded to walk back to the store.”
 

 
 *507
 
 Officer Dupre testified that at this time, he tried to stop the two males by driving his vehicle up and blocking their way to the store. He asked the two males to place their hands on the car and requested their identification cards. Maxwell did not have an ID, but provided his name and birth date to Officer Dupre. After Officer Dupre ran the two males’ names in the system, he found out that Maxwell had numerous warrants against him. The officer exited his vehicle to approach the two males, and he noticed Maxwell cupping a handgun in his hand. Officer Dupre testified that the gun was a blue steel semiautomatic handgun. Maxwell at this time began backing away from the officer, even though the officer had given him a verbal command to drop the weapon. Maxwell turned and ran down University Place. During this foot pursuit, Officer Dupre witnessed Maxwell drop the gun in Ra drain before continuing to run and hide in a parking garage where he was arrested by Officer Dupre.
 

 The security attendant, who was sitting by the parking lot, screamed and pointed to where Maxwell was hiding. Officer Dupre arrested Maxwell, returned him to the drain where Maxwell had dropped the gun, and waited for other members of the police force to arrive and assist him. Officer Dupre testified that at that time, Maxwell stated to Officer Dupre that he merely dropped marijuana in the drain, not a gun. Upon arrival and with Officer Dupre’s entire precinct present, the officers pried open the drain where the gun, a fully loaded Bersa Blue Steel semi-automatic .380 caliber handgun, was retrieved. Upon retrieval, the officers returned to the initial location where the Lexus was still located.
 

 At trial, New Orleans Police Department crime lab technical specialist Teddy Fambro testified that he did not take finger prints off the handgun because at the time it was retrieved, it was wet and dirty. At trial, Mr. Fambro identified photographs of the handgun since the gun was not available for review in court.
 

 Maxwell was charged with being a felon in possession of a handgun. Thus, his probation officer, Benny Stevens, a probation officer for the State of Louisiana, testified that he supervised Maxwell after he pled guilty to possession of crack cocaine on December 16, 2004, and was placed on probation for 18 months.
 

 On appeal, Maxwell raises four assignments of error:
 

 1) the district court erred in the prosecutor’s reasons for using peremptory challenges to remove five black prospective jurors, and in failing to require the prosecutor to go back and explain his strikes of five other black prospective jurors which were made before the
 
 Bat-son
 
 challenge was asserted, i.e., before the pattern became apparent; and in failing to keep official records which permit a review of the jury selection process;
 

 |42) the district court erred in granting the State’s challenge for cause to remove a black female prospective juror over objection by the defense; the transcript of voir dire is inadequate to review the ruling.
 

 3) the district court abused its discretion in overruling defense counsels objection and denying closing arguments, specifically, that the ten (10) year minimum sentence could be “changed”, that defense counsel should have questioned the police officer about the contents of the surveillance videotape which he lost before the defense could view it; and that the defense could have called witness to verify whether the police officer was telling the truth; and
 

 
 *508
 
 4) the district court erred in failing to include “illegal carrying of a concealed weapon” as a responsive verdict in Maxwell’s prosecution for being a “felon in possession of a firearm or carrying a concealed weapon.”
 

 In his first assignment of error, Maxwell argues the district court erred in not finding a pattern of racially motivated peremptory challenge when the State utilized nine of its twelve peremptory challenges to strike blacks from the jury and exercised cause challenges only against black venire members. In
 
 Batson v. Kentucky,
 
 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court stated “the Equal Protection Clause of the United States Constitution prohibits the use of peremptory challenges to discriminate on the basis of race.”
 
 Bat-son
 
 has been codified in Louisiana Law under La. C. Cr. P. art. 795(C), as follows:
 

 No peremptory challenges made by the state or the defendant shall be based solely upon the race of the juror. If an objection is made that the state or defense has excluded a juror, solely on the basis of race, and a
 
 prima facie
 
 case supporting that objection is made by the objecting party, the court may demand a satisfactory racially neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror. Such demand |sand disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.
 

 In
 
 Batson,
 
 the United States Supreme Court established a three-step analysis to determine whether a peremptory challenge has been used in violation of the Equal Protection Clause. The district court must first determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race.
 
 Batson,
 
 106 S.Ct. at 1722. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question.
 
 Batson,
 
 106 S.Ct. at 1723. This second step “does not demand an explanation that is persuasive or even plausible”; as long as the reason is not inherently discriminatory, it suffices.
 
 Purkett v. Elem,
 
 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (per curium). Finally, the district court must then determine whether the defendant has established purposeful discrimination.
 
 Batson,
 
 106 S. Ct at 1723-1724.
 

 In
 
 Snyder v. Louisiana,
 
 552 U.S. 472, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008), the United States Supreme Court reemphasized the district courts’ role under the third step of
 
 Batson:
 
 to carefully scrutinize the plausibility of the prosecutor’s explanation for a peremptory strike by evaluating the prosecutor’s credibility by assessing “not only whether the prosecutor’s demeanor belies a discriminatory intent, but also whether the juror’s demean- or can credibly be said to have exhibited basis for the strike attributed to the juror by the prosecutor.”
 
 Snyder,
 
 128 S.Ct. at 1208.
 

 In the present case, the voir dire record shows that a total of thirty seven (37) people were questioned in the selecting process. The court called two panels. The jury panel was completed and filled during these two panels. The voir dire record shows that when the district court denied the State’s challenges for cause on three | fi(3) black jurors, the State used its peremptory challenges to strike these prospective jurors during the first panel, in addition to two (2) others stricken peremptorily. The first three (3) prospective jurors the State requested challenges for cause on were: 1) Cleaster Baham, female;
 
 *509
 
 2) Vanessa Sanders, female; and 3) Dine-trius Dillon, female. In addition to these, the State used its peremptory strikes on Gregory Pound, male, and Glorious Santos, female. All these prospective jurors, according to the panel list attached to the record, were African Americans. When the State’s challenges for cause were denied by the district court, the State used its peremptory challenges.
 
 [1]
 
 The transcript reveals that it was not until the questioning of the second panel of prospective jurors and when the State made its sixth peremptory challenge on another African American person that the defense made a
 
 Batson
 
 objection. The defense made a
 
 Batson
 
 objection at this time involving black females that had been struck by the state up to Ms. Annette Hawkins, the sixth African American the State sought to strike.
 

 Immediately after the State challenged prospective juror Annette Hawkins, counsel for Maxwell made
 
 Batson
 
 challenges as to “black females that have been struck by the State up to now.”
 
 [2]
 
 Upon the defense’s
 
 Batson
 
 objection, the Prosecutor stated his reason as to why he requested for Ms. Hawkins and Ms. Renell Ballard to be struck. The State explained that both black females stated that they would not follow the law and would hold the State to a higher standard to prove its case than what is allowed by the law. The Prosecutor explained that as Ms. Hawkins was providing her statements to the State, Ms. Ballard was shaking |7her head in agreement. The district court accepted the State’s reason and did not instruct the State to explain why it struck the first 4 black women as well as Ms. Hawkins. The State further requested Ms. Renell Ballard to be stricken for cause because she stated that she would hold the State to a higher standard of proof and would require the State to produce more than one witness. The district court denied the State’s request; however, the State was still allowed to peremptorily strike Ms. Ballard. Upon the defense’s
 
 Batson
 
 objection, the district court refused to instruct the State to provide further reasons for its strike. The record indicates that the State provided reasons for the challenge for cause of each person to be eliminated; however, the State did not provide reasons for the peremptory strikes. The voir dire record shows that after the Prosecutor provided its reasons on the record for requesting Ms. Hawkins to be struck, he inquired from the district court as to whether he should present his reasons for the strikes of the previous prospective jurors to which the defense had made a
 
 Batson
 
 objection. The district court responded in the negative:
 

 State: ... those are my reasons. Do you want me to put the reasons on for the others, Your Honor?
 

 District Court: No. Well, I’ll deny the
 
 Batson
 
 challenge as to Ms. Hawkins.
 

 In applying the
 
 Batson
 
 three step test, which has been reaffirmed in recent cases such as
 
 Snyder v. Louisiana,
 
 552 U.S. 472, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008) and
 
 *510
 

 Miller-El v. Dretke,
 
 545 U.S. 231, 239, 125 S.Ct. 2317, 2324, 162 L.Ed.2d 196 (2005), we must examine the first element: the district court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a [ ¡¡peremptory challenge on the basis of race.
 
 Batson,
 
 476 U.S. 79, 106 S.Ct. 1712, 1722, 90 L.Ed.2d 69 (1986). In further applying the first test in
 
 Batson,
 
 in
 
 State v. Drake,
 
 2008-1194 (La.1/30/09), 2 So.3d 416, the Louisiana Supreme Court stated:
 

 The United States Supreme Court “did not intend, the first step of
 
 Batson
 
 to be so onerous that a defendant would have to persuade the judge on the basis of all the facts, some of which are impossible for the defendant to know with eertainty-that the challenge was more likely than not the product of purposeful discrimination.”
 
 Johnson v. California,
 
 545 U.S. 162, 170, 25 S.Ct. 2410, 2417, 162 1. L.Ed.2d 129 (2005). A defendant “satisfies the requirement of
 
 Batson
 
 first step by producing evidence sufficient to permit the district judge to draw an inference that discrimination has occurred.”
 
 Id.
 

 In the instant case, the defense did not raise a
 
 Batson
 
 challenge until the State was on their sixth peremptory strike. The record shows that Ms. Hawkins was the State’s sixth strike of an African American. The defense made a
 
 Batson
 
 objection of all African American females up to Ms. Hawkins. Defense counsel clearly referred to “black females,” when he made the
 
 Batson
 
 challenge. Though the defense made numerous
 
 Batson
 
 objections, the district court did not shift the burden onto the prosecutor to present a race-neutral explanation for striking the jurors in question. After the first
 
 Batson
 
 objection by the defense, prosecutor asked if he should give reasons for striking the previous strikes. The district court clearly stated no, thus ignoring the requirements of the
 
 Batson
 
 challenge.
 

 In
 
 State v. Drake,
 
 2008-1194 (La.1/30/09), 2 So.3d 416 — a per curium decision by the Supreme Court — during voir dire in
 
 Drake,
 
 the State peremptorily struck eight African American prospective jurors called for examination after the court excused seven others for cause. However, the State did allow and accept two | ^African American prospective jurors for the panel, of which the defense struck one. The district court found that defendant failed to satisfy the first step of the three step
 
 Batson
 
 test because he did not make a prima facie showing of discriminatory intent. The appellate court affirmed, finding no error in the district courts conclusion that there was no prima facie showing of purposeful discrimination met by the defense in its
 
 Batson
 
 objection.
 
 State v. Drake,
 
 2008-1194 (La.1/30/09), 2 So.3d 416. The Louisiana Supreme Court in
 
 Drake, supra,
 
 granted the defendant’s writ of certiorari and concluded in
 
 Drake
 
 that the circumstances set forth above gave rise to a reasonable inference of discriminatory purpose.
 
 Id.,
 
 2 So.3d at 417. Thus, the Supreme Court granted the defendant’s writ of certiorari and remanded the case to the district court “for purposes of providing the State with an opportunity to offer race-neutral reasons” for the exercise of eight of its peremptory challenges to exclude prospective black jurors.
 
 Id.,
 
 2 So.3d at 417.
 

 In the instant case, the State’s use of its peremptory challenges gave rise to a reasonable inference of discriminatory purposes on the part of the State. Though the district court did find initially that Maxwell made a prima facie showing that the State exercised peremptory challenges on the basis of race, it is apparent that the court subsequently accepted the Prosecutor’s race-neutral explanations for striking
 
 *511
 
 the first five named black jurors. However, there is nothing in the record that shows that the district court required the State to go back and provide reasons for the strikes of the first five prospective jurors. When the State inquired as to whether he should go back and give reasons for the first five juror strikes, the district court informed him that it was not necessary. The State argues that its reasons in requesting challenges for cause for three of the first five prospective Jjjjm'ors — which were subsequently struck by peremptory strikes — provided race neutral reasons for the peremptory strikes. However, this argument is without merit because the State still does not provide race neutral reasons for striking the remaining two prospective jurors, Ms. Santos and Mr. Pounds.
 

 The State further requested Ms. Ballard to be stricken for cause because she stated that she would hold the State to a higher standard of proof and would require the State to produce more than one witness. The district court denied the State’s request; however, the State was allowed to still strike Ms. Ballard using a peremptory challenge. Upon defense’s
 
 Batson
 
 objection, the district court refused to instruct the State to provide further reasons for their strike. The State proceeded by striking the eighth prospective juror, another black female, Ms. Monica Sawyer. The State requested Ms. Sawyer to be stricken for cause, but this request was denied by the district court. Instead, the district court allowed for the prospective juror to be removed by the use of peremptory challenge. The district court merely noted the defense’s
 
 Batson
 
 objection to the removal of Ms. Sawyer rather than following the second element of
 
 Batson
 
 and demanding a satisfactory racially neutral reason for the exercise of the challenge.
 
 Batson,
 
 476 U.S. 79, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986).
 

 The State struck all but two African American prospective jurors. On the jury panel at trial, there were ten whites, two blacks, and a white alternate. This group is not reflective of the population of the Parish of Orleans in which Maxwell resides and is domiciled. By the district court failing to require the State to provide reasoning for the first five strikes which the defense counsel made a
 
 Batson
 
 objection to, the
 
 Batson
 
 objection was violated. The defense made a prima facie showing of discriminatory intent on the part of the State; however, the burden to | nprove otherwise was never transferred onto the State. Therefore, the district court did not complete the three part test of
 
 Batson.
 

 Accordingly, Maxwell’s assignment of error has merit. The manner in which the State exercised its peremptory challenges in this case, based on race, resulted in a violation of the defendant’s constitutional rights; this error raises serious federal constitutional equal protection issues affecting the rights of both the defendant and the excused venire-member. See
 
 State v. Coleman,
 
 2006-0518, p. 9 (La.11/02/07), 970 So.2d 511, 516-517. This error is a structural one, affecting the framework within which the trial proceeded.
 
 Id.,
 
 2006-0518, p. 9, 970 So.2d at 517. Here, the State used its peremptory strikes to strike all African Americans, the same race as the defendant. When Maxwell made a
 
 Batson
 
 objection, the district court did not shift the burden of proof onto the State to provide race-neutral reasons for its strikes. Thus, the district court erred in applying the
 
 Batson
 
 three part test and evaluating the
 
 Batson
 
 objection by Maxwell. Consequently, we vacate Maxwell’s conviction and sentence, and remand this matter to the district court to conduct a new trial. Furthermore, we pretermit the defendant’s three remaining assignments of error having found that the
 
 *512
 
 district court erred in addressing his
 
 Bat-son
 
 challenges.
 

 A review of the record reveals two errors patent. Both the sentencing transcript and the minute entry from the date of sentencing reflect that the district court sentenced Maxwell to ten (10) years at hard labor.
 

 La. R.S. 14:95.1(B) states that whoever is being found guilty of possession of a firearm by a person who has been convicted of,
 
 inter alia,
 
 any violation of the Uniform Controlled Dangerous Substances Law, La. R.S. 40:961
 
 et seq.,
 
 which is a felony, shall be imprisoned at hard labor for not less than ten nor more than [ 12fifteen years “without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars or more than five thousand dollars.”
 

 In the instant case, Maxwell’s prior conviction was for possession of cocaine, a violation of La. R.S. 40:967(C) and a felony.
 

 The district court failed to stipulate that Maxwell’s sentence be served without the benefit of probation, parole, or suspension of sentence.
 

 La. R.S. 15:301.1(A) provides that the failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of parole, probation or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without the benefit of parole, probation or suspension of sentence. La. R.S. 15:301.1(A) deems that those required statutory restrictions are contained in the sentence, whether or not imposed by the sentencing court, and the paragraph self-activates the correction and eliminates the need to remand for a ministerial correction of an illegally lenient sentence resulting from the failure of the sentencing court to impose the restrictions.
 
 State v. Williams,
 
 2000-1725, p. 10 (La.11/28/01), 800 So.2d 790, 799;
 
 State v. Boudreaux,
 
 2007-0089, pp. 3-4 (La.App. 4 Cir. 8/15/07), 966 So.2d 79, 81-82,
 
 writ denied,
 
 2007-1936 (La.2/1/08), 976 So.2d 717.
 

 Therefore, the district court’s failure to stipulate that Maxwell’s sentence to be served without the benefit of probation, parole, or suspension of sentence pursuant to La. R.S. 14:95.1(B) does not require a remand by this court for a ministerial correction of the illegally lenient sentence.
 

 The second patent error is that the district court failed to impose a mandatory fine on Maxwell of not less than one thousand dollars nor more than five thousand dollars pursuant to La. R.S. 14:95.1(B). The failure to impose a mandatory fine for | ^conviction under La. R.S. 14:95.1(B) requires that the appellate court remand the case for imposition of the fine.
 
 State v. Major,
 
 2008-0861, p. 4 (La.App. 4 Cir. 12/10/08), 1 So.3d 715, 719;
 
 State v. Brown,
 
 2003-2155, p. 5 (La.App. 4 Cir. 4/14/04), 895 So.2d 542, 545.
 

 However, having vacated Maxwell’s conviction and sentence, and remanding this matter to the district court to conduct a new trial, we find the resolution of this patent error is rendered moot.
 

 DECREE
 

 For the forgoing reasons, the conviction and sentence imposed upon Eric Maxwell is reversed and remanded for a new trial.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . However, the district court granted the States challenge for cause against Ms. Lan Tran, an Asian female. Ms. Tran had provided similar answers as the jurors previously stricken.
 

 [2]
 

 . There is no document in the record or the transcript of voir dire that reflects the race of the first five (5) jurors’ stricken by the prosecutor. However, there is an attachment in the appellant's brief which shows the figures depicting the sex and race of the jury panel and the panel list with handwritten information by the defense attorney as to the age, sex, occupation and race of each prospective juror. The figures and panel list attached in the brief shows that the first five (5) prospective jurors struck by the State were all black people, 4 females and 1 male.