MICHAEL E. KIRBY, Judge.
 

 \,STATEMENT OF THE CASE
 

 Eric T. Maxwell was charged with possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1. He pleaded not guilty at his arraignment, and the trial court subsequently denied his motion to suppress the evidence, but it did suppress a videotape and some photographs. A twelve-person jury found Maxwell guilty as charged. The court sentenced him to serve ten years at hard labor.
 

 He timely appealed and this court reversed his conviction and sentence and remanded the case for a new trial.
 
 [1]
 
 The Louisiana Supreme Court granted the State’s writ application and vacated this court’s decision to the extent that it reversed defendant’s conviction and sentence.
 
 [2]
 
 That court remanded the case to the trial court to provide the State an opportunity to articulate race-neutral reasons for the exercise of eight peremptory challenges against African-Americans and to thereafter rule on the ultimate question under
 
 Batson v. Kentucky,
 
 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), “of whether the prosecutor intentionally used race to select jurors.”
 
 Maxwell,
 
 2009-2235, pp. 1-2, 83 So.3d 155.
 

 12The trial court held a hearing at which the State purported to give race-neutral reasons for striking nine prospective African-American jurors. It orally ruled that it found no evidence to substantiate a violation of
 
 Batson,
 
 and it later gave written reasons reciting the reasons given by the State. This timely appeal follows.
 

 FACTS
 

 The facts were recited in our previous decision,
 
 State v. Maxwell,
 
 2008-1007, pp. 1-3 (La.App. 4 Cir. 8/19/09), 17 So.3d 505, 506-507. We summarize them here.
 

 New Orleans Police Department Officer Samuel Dupre was on routine patrol when someone flagged him down to inform him that two black males were “ducked down” in a car and it seemed like they were hiding from someone. Officer Dupre went to the location and saw the vehicle and the two men she described.
 

 From about 20 feet away Officer Dupre witnessed Maxwell and another male, exit the car, walk up to a store on Canal Street, peer through the window and return to the vehicle. The two men reached under the seats, retrieved something and placed it in their waist bands or pocket. Officer Dupre could not confirm what they were retrieving or where on their bodies they hid the item. The men began walking back to the store. Their actions caused Officer Dupre think they were going to rob the store.
 

 The officer tried to stop the men by driving his vehicle up and blocking their way to the store. He asked them to place their hands on the car and requested their identification. Maxwell did not have an ID, but provided his name and birth date. IsUpon running their names through the
 
 *117
 
 system Officer Dupre found out that Maxwell had numerous outstanding warrants. The officer exited his vehicle to approach the men and noticed Maxwell cupping a blue steel semi-automatic handgun. The suspect began backing away from the officer, even though Officer Dupre had commanded him to drop the weapon. Maxwell turned and ran down University Place. During the ensuing chase, Officer Dupre saw Maxwell drop the gun in a drain as he ran and hid in a parking garage, where he was finally arrested.
 

 After the arrest Officer Dupre returned him to the drain and waited for help. When help came the officers pried open the drain and retrieved a fully loaded Ber-sa Blue Steel semi-automatic .380 caliber handgun.
 

 ERRORS PATENT
 

 A review of the record reveals two patent errors. Both the sentencing transcript and the minute entry of the sentencing reflect that the trial court sentenced defendant to ten years at hard labor. It failed to stipulate that the sentence be served without the benefit of probation, parole, or suspension of sentence, as mandated by La. R.S. 14:95.1(B) since Maxwell’s earlier conviction was for a felony, possession of cocaine.
 

 Pursuant to La. R.S. 15:301.1(A), the failure of a sentencing court to recite that all or a portion of a sentence is without benefit of parole, probation or suspension of sentence does not in any way affect the statutory requirement. The statute imputes the statutory restrictions in the sentence, if they are not imposed by the sentencing court; the statute self-activates the correction eliminating the need to remand for the ministerial correction of an illegally lenient sentence.
 
 State v. Williams,
 
 2000-1725, p. 10 (La.11/28/01), 800 So.2d 790, 799;
 
 State v. Boudreaux,
 
 2007-0089, pp. 3-4 (La.App. 4 Cir. 8/15/07), 966 So.2d 79, 81-82.
 

 The second patent error is the trial court’s failure to impose a mandatory fine of not less than one thousand dollars nor more than five thousand dollars pursuant to La. R.S. 14:95.1(B). This failure requires an appellate court to remand for imposition of the fine.
 
 State v. Major,
 
 2008-0861, p. 4 (La.App. 4 Cir. 12/10/08), 1 So.3d 715, 719, citing
 
 State v. Jefferson,
 
 2004-1960, p. 40 (La.App. 4 Cir. 12/21/05), 922 So.2d 577, 604;
 
 State v. Brown,
 
 2003-2155, p. 5 (La.App. 4 Cir. 4/14/04), 895 So.2d 542, 545.
 

 ASSIGNMENT OF ERROR NO. 1
 

 In his first assignment of error defendant argues that the trial court erred, on remand, by accepting the prosecutor’s purported race-neutral reasons for peremptorily challenging black prospective jurors, and in thus finding no violation of
 
 Batson v. Kentucky,
 
 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
 

 In
 
 Batson,
 
 the United States Supreme Court held that the Fourteenth Amendment’s Equal Protection Clause prohibits the use of peremptory challenges to exclude a prospective juror on the basis of the person’s race.
 

 The Louisiana Supreme Court set forth the applicable law on
 
 Batson
 
 in
 
 State v. Anderson,
 
 2006-2987 (La.9/9/08), 996 So.2d 973, as follows:
 

 If the defendant makes a prima facie showing of discriminatory strikes, the burden shifts to the state to offer raeially-neutral explanations for the challenged members. If the race-neutral explanation is tendered, the trial court must decide, in step three of the
 
 Batson
 
 analysis, whether the defendant has proven purposeful discrimination. The race-neutral explanation need not be persuasive or even plausible.
 
 Rice v.
 
 
 *118
 

 Collins,
 
 546 U.S. 333, 126 S.Ct. 969, 973-974, 163 L.Ed.2d 824 (2006),
 
 quoting Purkett v. Elem,
 
 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). It will be deemed race-neutral unless a discriminatory intent is inherent in the explanation. The ultimate burden of persuasion as to racial motivation rests with, and never shifts from, the opponent of the peremptory challenge.
 
 State v. Tyler,
 
 97-0338, at 3 (La.9/9/98), 723 So.2d 939, 942,
 
 cert. denied,
 
 526 U.S. 1073, 119 S.Ct. 1472, 143 L.Ed.2d 556 (1999).
 

 The trial court’s findings with regard to a
 
 Batson
 
 challenge are entitled to great deference on appeal.
 
 Id.
 
 at 4 [723 So.2d 939]; see also,
 
 State v. Juniors,
 
 03-2425, p. 28 (La.6/29/05), 915 So.2d 291, 316. When a defendant voices a
 
 Batson
 
 objection to the State’s exercise of a peremptory challenge, the finding of the absence of discriminatory intent depends upon whether the trial court finds the prosecutor’s race-neutral explanations to be credible. “Credibility can be measured by, among other factors, the prosecutor’s demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy.”
 
 Miller-El,
 
 537 U.S. at 339, 123 S.Ct. at 1040.
 

 Anderson,
 
 2006-2987 at pp. 41-43, 996 So.2d at 1004-1005.
 

 Defendant’s jury was composed of ten white and two black members. The State utilized nine peremptory challenges to strike black prospective jurors. Defense counsel did not voice a
 
 Batson
 
 objection until the State had used five peremptory challenges to strike four black females and one black male prospective jurors. When the State sought to strike the sixth black prospective juror, Annette Hawkins, defense counsel made
 
 Batson
 
 challenges as to “black females that have been struck by the State up to now.” The next four black prospective jurors struck peremptorily by the State, including Ms. Hawkins, were three females and one male. Lastly, the State used a peremptory challenge to strike a black prospective | fialternate juror. The white alternate selected in her place was never called to deliberate, and thus defendant does not raise this strike on appeal.
 
 [3]
 

 The prior panel found the State’s use of peremptory challenges gave rise to a reasonable inference of discriminatory purpose under
 
 State v. Drake,
 
 2008-1194 (La.1/30/09), 2 So.3d 416 (“A defendant ‘satisfies the requirements of Batson’s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.’ ”). Thus, it expressly found that defendant made a
 
 prima facie
 
 showing of discriminatory intent and that the trial court failed to shift the burden to the State to present race-neutral explanations for its striking of the jurors, the second step of
 
 Batson.
 
 Consequently, it found the
 
 Batson
 
 claim meritorious and reversed the conviction and sentence.
 

 The Louisiana Supreme Court did not disturb the panel’s finding that the trial court had erred by not shifting the burden. Rather, the court vacated the decision only so far as it reversed the conviction and sentence outright. The court remanded the case to the trial court to allow the
 
 *119
 
 State to articulate race-neutral reasons for its exercise of those peremptory challenges and, thereafter for the trial court to rule on the ultimate question of whether the State intentionally used race to select jurors to try defendant’s case.
 
 Maxwell,
 
 2009-2285, pp. 1-2, 33 So.3d 155.
 

 On remand, the trial court held a hearing where one of the two prosecutors who tried the case referred to his “notes” and gave what he characterized as his race-neutral reasons. The prosecutor stated:
 

 |7For Mr. [sic] Baham, who was my first cut, he [sic] stated that during voir dire that [sic] he would need more evidence. S-2 was Corey (sic), I believe the last name was Pounds or Pounds [sic], he was unemployed at the time; also, he failed to maintain eye contact with me. S-3 was Ms. — was Sanders. That juror stated that they [sic] were a juror in a civil case and they [sic] found for the plaintiff. S-4 was Santos, same thing, that juror stated in open court that they [sic] were in a civil case and they [sic] found for the plaintiff. S-5 was Dinetri-us, I believe it was Dillon, they [sic] were recently in a murder case where the verdict was hung. S-6 was Hand (sic), would not maintain eye contact with me. S-7 was Ballard, they [sic] recently [sic] or had a not guilty verdict in a drug case. Also, they [sic] were a juror in a civil case where they [sic] voted for [sic], the verdict was for the plaintiff. That juror also stated they [sic] could not follow the law. S-8 was Sanders, stated in open court they [sic] could not follow the law. S-9 was Brown, said they [sic] would need more evidence, would hold the State to a higher burden. And then the alternate was Watkins, [sic] would not maintain eye contact with me.
 

 Following this soliloquy, defense counsel expressly requested the trial court to review the voir dire transcript before making its decision. In its written reasons for judgment the trial court listed the above purported race-neutral reasons and it stated that: “Based upon the reasons put forth, the
 
 Batson
 
 challenge is hereby denied.”
 

 Defendant contends the trial court erred in accepting the prosecutor’s reasons as race-neutral, referring to most of them as mere pretexts to strike black jurors.
 

 The prosecutor’s sparse reasons were based on his notes: “I have my notes and I would ask at this time to put my race-neutral reasons on the Record.” Transcripts of both the voir dire and the challenge conferences from the trial contain more detailed reasons for which the State struck most of these prospective jurors. These reasons were either given at the challenge conferences, one for each [ 8panel of prospective jurors, or were evidenced by voir dire colloquies between prospective jurors and the prosecutor, and on occasion, with defense counsel. Accordingly, we will consider the voir dire and challenge conference transcripts in reviewing defendant’s
 
 Batson
 
 claims.
 

 The challenge transcript reflects that the names of the nine prospective jurors struck by the State were: S-l, Oleaster Baham; S-2, Gregory Pounds; S-3, Vanessa Sanders; S-4, Gloria Santos; S-5 Dinetrius Dillon; S-6, Annette Hawkins; S-7, Renell Ballard; S-8, Monica Sawyer; and S-9, Shawn Brown.
 

 Defendant does not argue that the State improperly struck S-l, Oleaster Baham, on the basis of her race. The voir dire contains three pages of dialogue between the prosecutor and Ms.
 
 Baham,
 
 after she said she would hold the State to a higher standard and that she felt the State needed physical evidence for her to find defendant guilty. Although Ms. Baham said she would obey the law, she was not sure she
 
 *120
 
 could find the defendant guilty if the State proved the elements of the crime but there was no physical evidence. She eventually confirmed that even if the State did not have physical evidence, she could find defendant guilty if she believed one of its witnesses. The trial court denied the State’s challenge for cause so it used a peremptory challenge. Even considering that Ms. Baham eventually confirmed that she could find defendant guilty on the credible testimony of one State witness, defendant has failed to prove purposeful discrimination in the State’s striking of her. See
 
 State v. Elie,
 
 2005-1569, p. 8 (La.7/10/06), 936 So.2d 791, 797 (“The State’s continued wariness of a prospective juror despite assurances the juror will remain impartial does not necessarily establish discriminatory purpose.”)
 

 Defendant attacks the reasons the State gave for striking S-3, Vanessa Sanders, and S-4, Gloria Santos, prior service by each on civil juries that returned 1 flverdicts in favor of plaintiffs. Ms. Sanders’ prior jury service was ten years ago; Ms. Santos’ was fifteen years ago. Defendant argues that those reasons were suspicious, given that the State did not strike two white prospective jurors who had served on the same types of juries. (Defendant does
 
 not
 
 argue that prior civil jury service resulting in a verdict for plaintiff is an impermissible race-neutral reason.)
 

 Discriminatory intent may be found if the reasons offered for excusing a prospective minority juror apply equally as well to a prospective non-minority juror who is not struck. See
 
 Miller-El v. Dretke,
 
 545 U.S. 231, 241, 125 S.Ct. 2317, 2325, 162 L.Ed.2d 196 (2005)(“If a prosecutor’s proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at
 
 Bat-son’s
 
 third step.”). However, as recognized in
 
 Snyder v. Louisiana,
 
 552 U.S. 472, 483, 128 S.Ct. 1203, 1211, 170 L.Ed.2d 175 (2008), “a retrospective comparison of jurors based on a cold appellate record may be very misleading when alleged similarities were not raised at trial. In that situation, an appellate court must be mindful that an exploration of the alleged similarities at the time of trial might have shown that the jurors in question were not really comparable.” Here defendant’s trial counsel did not raise any alleged similarities between prospective black jurors struck by the State and the two prospective white jurors the State found acceptable.
 

 As to S-3, Vanessa Sanders, the prosecutor stated he was striking her because: “She was all over the place. She said she could, she said she couldn’t. The state has a right to a fair and impartial jury as does the defense. I believe that she said emphatically that she would require more evidence and then she came back and said, ‘I’ll be fair and impartial as long as you give me more evidence.’ ” | inDefense counsel countered, “I think she made it clear by the end and it took a while to get there. But I believe at the end of the colloquy that she did arrive at that point saying that she could be fair and impartial.” The trial court denied the State’s challenge for cause, and the State peremptorily struck her.
 

 There was an extended colloquy of almost six pages, between the prosecutor and Ms. Sanders concerning her need for the gun and fingerprints before she would convict. She stated that she would hold the State to a higher burden because defendant’s life was at stake. Contrary to defense counsel’s representation, the voir dire transcript does not reflect that Ms. Sanders arrived at a point where she could be fair and impartial. While at one point
 
 *121
 
 she indicated she could return a guilty verdict if the police officer was credible, her final word was that she would want fingerprints and the weapon.
 

 Considering the colloquy between her and the prosecutor and State’s reasons for striking Ms. Sanders, as with Ms. Baham, we conclude the record does not support a finding that the State struck her based on race. See
 
 Elie, supra.
 
 Defendant has failed to show purposeful racial discrimination in the State’s striking of Ms. Sanders.
 

 As for Ms. Santos, S-4, the prosecutor asked her only four questions, all concerning her prior jury service on a jury that rendered a verdict for the plaintiff. No reasons were given by the prosecutor for striking Ms. Santos and at the hearing on remand he said that he struck her based on her prior jury service.
 

 In arguing that this reason is suspicious, since the State did not strike two white prospective jurors who had similar prior jury service, defendant first points to prospective white juror Robert Bories, whom the State accepted. Mr. Bories disclosed that a decade earlier he had served in a personal injury case and had |ureturned a verdict for the plaintiff. However, Mr. Bories also stated that his brother-in-law had been murdered; that an arrest had been made in the case; and that the individual had been convicted. Thus, the prosecutor plausibly could have believed the latter factors outweighed the prior civil jury service and that he would have been more sympathetic toward the State than the defendant.
 

 Defense counsel apparently felt the same way, because he peremptorily challenged Mr. Bories. He also peremptorily struck prospective white juror Alan De-lery, presumably because Delery had two friends who had been murdered and someone once tried to break into his car but ran off when he hit the panic button.
 

 Defendant points to prospective white juror Susan Wiseman, who disclosed that she had served on a criminal case some thirty-five years ago in which the defendant had been found not guilty. The State accepted Ms. Wiseman, but defense counsel struck her, presumably for a reason other than the fact that she was white.
 
 [4]
 
 The fact that the defense struck Ms. Wiseman suggests that the State rightfully found her acceptable.
 

 Considering all these factors and circumstances, we find defendant has failed to prove purposeful discrimination in the State’s peremptory strike of Ms. Santos because of her prior jury service through his comparison of prospective black jurors to prospective white jurors.
 

 |12Next, defendant attacks the State’s striking of prospective juror S-7, Renell Ballard, whom the prosecutor stated was struck because she had served on a civil jury that returned a verdict for the plaintiff, had served on a criminal jury that returned a not guilty verdict in a drug case, and had stated that she could not follow the law. During the challenge conference the State unsuccessfully asked the trial court to strike Ms. Ballard for cause because that she would hold the State to a
 
 *122
 
 higher standard and wanted more than one witness. Defense counsel’s response was: “Your Honor, I don’t think it got that far in here.”
 

 The transcript does not expressly show that Ms. Ballard, who was in the second panel of prospective jurors, stated that she would hold the State to a higher standard and would want more than one witness— although defense counsel’s response suggested that she had said something approaching that. One part of the transcript does reflect a colloquy between the prosecutor and an unidentified juror about a misperception by the prospective juror regarding exceptions to the prohibition against convicted felons being able to possess firearms.
 

 Even assuming the prosecutor struck Ms. Ballard solely because she had served on a civil jury that returned a verdict for the plaintiff and on a criminal jury that returned a not guilty verdict in a drug case, defendant has failed to prove— by comparing Ms. Ballard’s situation to white prospective jurors Bories and Wise-man — purposeful discrimination on the basis of race. See
 
 U.S. v. Douglas,
 
 525 F.3d 225, 241 (2 Cir.2008)(“The finding that individuals of any race or color who have served on juries that acquitted tend to be people that the government does not want’ is a permissible view, and the court’s finding that the government would have used a peremptory challenge to excuse [the prospective juror] regardless of race is not clearly erroneous.”).
 

 | 13As to black prospective juror S-5, Denetrius Dillon, the prosecutor said he struck her because she had recently served on a criminal jury that was unable to reach a verdict. Indeed, the voir dire transcript reflects Ms. Dillon had served in an aggravated battery case the week before defendant’s trial. She had also served on a criminal jury in 2003 that rendered a verdict of guilty. However, the transcript reflects that the State moved to strike Ms. Dillon for cause on the ground that her husband had been tried and acquitted in the same section of court where defendant was being tried. The prosecutor also claimed that Ms. Dillon said she would hold the State to a higher standard, would expect more than one witness, and had a problem with the lack of fingerprints.
 

 The trial court denied the State’s challenge for cause, so it struck Ms. Dillon peremptorily. When defense counsel was asked for his response to the State’s challenge for cause, counsel recalled Ms. Dillon had served on a jury that had returned a guilty verdict; he did not recall hearing Ms. Dillon say she would hold the State to a higher standard of proof. Significantly, defense counsel took no issue with the prosecutor’s claim that Ms. Dillon’s husband had been tried and acquitted in the same section of court where defendant was being tried, or that she had a problem with the lack of fingerprints. This suggests that there was merit to these assertions, although the trial court said it did not recall Ms. Dillon’s husband.
 

 The prosecutor may have gotten Ms. Dillon confused, to some extent, with prospective black juror Ms. Sanders, whom it also struck. Ms. Sanders had a problem with no fingerprints and said something about holding the State to a higher burden. The transcript reflects no such problems voiced by Ms. Dillon. Nevertheless, considering that defense counsel did not take issue with the very specific assertion that Ms. Dillon’s husband had been tried and acquitted in the |14same section of court, defendant has failed to establish the State purposefully discriminated on the basis of race when it struck her. It strains credulity to suggest that the situation with her husband would not be a legitimate race-neutral reason to strike Ms. Dillon.
 
 *123
 
 In addition, while she had served on a criminal jury in 2003 that had convicted a defendant, she also had served on a jury just the week before this trial in which the jury had not convicted the defendant. That is an independent race-neutral reason for striking Ms. Dillon.
 

 Defendant posits that these purported race neutral explanations were suspicious because while the state rejected some black jurors who had served on criminal juries, it did not reject prospective black juror Desiree Washington. Ms. Washington disclosed that she had served on a criminal jury the week preceding defendant’s trial in which the jury had found the defendant not guilty. The State accepted Ms. Washington and she served on the jury that convicted defendant. Defendant argues: “Because the prosecutor was not consistent in striking venirepersons based on their jury service, his explanations are undoubtedly pretextual.”
 

 However, we note Ms. Washington engaged defense counsel in a lengthy dialogue, of almost five pages in the transcript, concerning the burden of proof. At one point she said she believed defense counsel had to prove that defendant did not commit the crime. While Ms. Washington ultimately stated she would have to listen to all the evidence and
 
 “go from
 
 there,” it was reasonable for the State to accept her, given her initial inclination that defense counsel had to prove defendant did not commit the crime. Moreover, that the State only struck some black prospective jurors based on their prior criminal jury service suggests that the ones it struck were not struck because of their race.
 

 | |BPefendant argues that the implausibility of the prosecutor’s race-neutral explanations is reinforced by the fact that the State struck prospective black juror S-2, Gregory Pounds, because he was unemployed, but did not strike a prospective white male juror, Matthew Finnell, who also was unemployed.
 

 Gregory Pounds, was in the first voir dire panel and was the second prospective juror struck peremptorily by the State. It also struck five black females from that panel. Defense counsel made no
 
 Batson
 
 objections during the first voir dire challenge conference. During the second and final conference, the first prospective black juror struck by the State was S-6, Annette Hawkins, which prompted defense counsel to state: “Your Honor, I object for Batson involving black females that have been struck by the State up to now.” Gregory Pounds was a black male, and thus not covered by that objection, which was expressly limited to black females.
 

 La.C.Cr.P. art. 795(C) expressly requires an objection to be made that the State “has excluded a juror solely on the basis of race....” “In order to preserve the complaint that the prosecutor’s use of a peremptory challenge was based on race, the defendant must make an objection before the entire jury panel is sworn.”
 
 State v. Williams,
 
 524 So.2d 746 (La.1988). Since defendant failed to object to the State’s striking of Gregory Pounds, he has failed to preserve for review any
 
 Batson
 
 claim as to Pounds.
 

 Further, there is no merit to the substance of this suggestion. The transcript reveals that after the State exercised its challenges to the second panel and prior to the selection of the alternate, the trial court asked if the State had any back-strikes. The prosecutor said he was thinking about striking Matthew Finnell, but the trial court noted that Finnell had been on the first panel, implying it was too late to 1 j fibackstrike him. The State accepted that ruling. Since the State sought to backstrike prospective unemployed white
 
 *124
 
 juror Finnell we find no merit to defendant’s argument in this regard.
 

 Defendant next refers to the prosecutor’s obvious mistake at the hearing on remand by referring to prospective juror S-6, Annette Hawkins, as “Hand.” That the prosecutor struck a “non-existent man named Hand’ for failure to make eye contact with him was implausible” and “casts doubt on all of his claims ...” is the gist of this argument. However, the prosecutor did not refer to “Hand” as a male, and both “Hand” and “Hawkins” begin with the letter “H.” Perhaps attorney penmanship in the throes of jury selection is at the root of the prosecutor’s confusion.
 

 In any event, the prosecutor stated that he had struck “Hand” because of her failure to maintain eye contact with him. At the challenge conference the prosecutor did not mention Ms. Hawkins’ eye contact with him, and the record would not reflect it absent it being noted by a party or the court. He acknowledged that Ms. Hawkins ultimately said she would be fair and impartial, but at the same time, she was shaking her head in agreement when Ms. Ballard was saying she could not follow the law. Defense counsel said that he did not think “it got that far in here.”
 

 The conference transcript reflects that the prosecutor challenged both Ms. Hawkins, and the next prospective juror up, S-7, Renell Ballard, for cause because both, especially Ms. Ballard, stated that they could not follow the law and would hold the State to a higher standard. As we noted in the strike of Ms. Ballard, the transcript does not expressly show that Ms. Hawkins said that she could not follow the law and would hold the State to higher standard. However, defense counsel’s 117response to the State’s reasons for wanting to challenge them for cause infers that there was something to the State’s reasons, although, perhaps not to the extent represented by the State.
 

 The trial court expressly rejected defendant’s
 
 Batson
 
 challenge as to the State’s strike of Ms. Hawkins. Given the State’s reasons, defendant has failed to prove purposeful discrimination in the State’s striking of Ms. Hawkins and he has failed to establish that the trial court erred in accepting the State’s race-neutral reason for striking her and he has failed Hawkins.
 

 Defendant makes no argument as to prospective juror S-8, Monica Sawyer, except, as will be discussed
 
 infra,
 
 concerning some alleged confusion involving her and Ms. Sanders. The transcript reflects that Ms. Sawyer stated she would need more than one witness. The prosecutor replied stating: ‘You would not be able to follow the law. That’s okay. Your name is Ms. Sawyer.” The State challenged Ms. Sawyer for cause, stating that although she said she could be fair and impartial, she also said she would need more than one witness. The State noted that the statements were contradictory. The trial court denied the challenge for cause, recalling that at the end Ms. Sawyer said she could be fair and impartial if the State was able to prove all the elements of the crime. The State then peremptorily struck Ms. Sawyer. See
 
 Elie, supra.
 
 Defendant has failed to establish purposeful discrimination on the basis of race in the State’s striking of Ms. Sawyer.
 

 Defendant also argues that the prosecutor’s mistaken reference at the hearing on remand to two prospective jurors named Ms. Sanders is evidence that the trial judge ruled twice on the prosecutor’s strike against prospective juror S-3, Vanessa Sanders. However, the first reference to a Ms. Sanders was to Vanessa Sanders. The second reference to “Sanders,” prospective juror S-8, obviously was 11sMonica Sawyer. Importantly, the prose
 
 *125
 
 cutor gave different reasons at the hearing on remand for striking the two women, which are reflected in the colloquies between the prosecutor and Ms. Sanders and Ms. Sawyer during voir dire, and the concerns expressed by the prosecutor during the voir dire challenge conference as to both of the women. There is no merit to this argument by defendant.
 

 Defendant next attacks the State’s strike of prospective juror S-9, Shawn Brown. At the challenge conference for the second panel, the State challenged him for cause, saying that “[a]t the very end” Brown said he would hold the State to a higher burden. The prosecutor represented that when he asked Brown if he could find defendant guilty as charged if the State proved beyond a reasonable doubt that defendant was a convicted felon and was in possession of a weapon, Brown had said he would want more. The prosecutor further represented that when he asked Brown what he would want, Brown could not tell him.
 

 The trial court denied the State’s challenge for cause because it remembered Brown “also saying” that if defendant was proven to be guilty of carrying a gun he could also say he was guilty of being a convicted felon in possession of a gun. Because the court found the prosecutor confused as to Brown’s response, it denied the State’s challenge for cause. The State then struck Brown peremptorily.
 

 Defendant submits that the voir dire reveals no statements attributable to Brown concerning a need for more evidence or his holding the State to a higher burden. Defendant concedes, though, that in giving its reason for striking Brown the State was “most certainly” referring to a colloquy between the prosecutor and an unidentified prospective juror. Defendant argues that the trial judge realized that the prosecutor was confused about what Mr. Brown said or meant, and thus it should not have accepted the prosecutor’s reason given at the hearing on remand. | iflThus, defendant admits the prosecutor was confused about what Brown said or meant. Defendant does not argue that the stated reason would have been evidence of purposeful discrimination had it been accurate. That the prosecutor was confused about what Brown said is not indicative of an intent to strike Brown because of his race. Defendant has failed to prove purposeful discrimination as to the striking of Brown.
 

 The prior panel of this court reversed defendant’s conviction and sentence because it found the trial court erred in not requiring the State to provide race-neutral reasons for the exercise of certain peremptory challenges. On remand the State set forth its race-neutral reasons. Viewing those reasons, with the reasons contemporaneously given during the challenge conferences, and issues focused on during voir dire, we find defendant has failed to establish purposeful discrimination by the State in the exercise of any of its peremptory strikes of prospective black jurors.
 

 There is no merit to this assignment of error.
 

 ASSIGNMENT OF ERROR NO. 2
 

 In this second assignment of error, defendant argues that the trial court erred in denying his request to be present at the hearing on remand. Defendant was in the custody of the Department of Corrections. In support of this contention he cites La.C.Cr.P. art. 831(A)(3):
 

 A. Except as may be provided by local rules of court in accordance with Articles 522 and 551, a defendant charged with a felony shall be present:
 

 * * *
 

 (3) At the calling, examination, challenging, impaneling, and swearing of the
 
 *126
 
 jury, and at any ^subsequent proceedings for the discharge of the jury or of a juror; ...
 

 La.C.Cr.P. art. 831 applies, by its plain language, to proceedings up to and including the rendition of the verdict or judgment. Here the jury was discharged after returning its verdict approximately two and one-half years before the remand hearing. It is clear that La.C.Cr.P. art. 831(A)(3) did not expressly require the presence of the defendant at this hearing.
 

 Nevertheless, defendant submits that his exclusion from the proceeding violated his due process rights. However, it is well-settled that “the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.”
 
 Wright v. West,
 
 505 U.S. 277, 298, 112 S.Ct. 2482, 2493, 120 L.Ed.2d 225 (1992);
 
 U.S. v. Gagnon,
 
 470 U.S. 522, 527, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985);
 
 Styron v. Johnson,
 
 262 F.3d 438, 448 (5 Cir.2001).
 

 Defendant has not articulated any prejudice resulting from his absence at the hearing on remand where the State set forth its reasons for peremptorily striking prospective black jurors. Defendant’s counsel was present. There was no examination of the prosecutor by defense counsel. No witness was sworn. Defendant could not have been called to testify.
 

 There is no merit to this assignment of error.
 

 ASSIGNMENT OF ERROR NO. 3
 

 Defendant’s third assignment of error covers issues raised in his first appeal, but pretermitted by this Court’s ruling on the
 
 Batson
 
 issue. He argues that the trial court abused its discretion in overruling his objections to two allegedly prejudicial 12i comments by the prosecutor in his rebuttal closing argument, and in denying his motions for mistrial as to two other allegedly prejudicial comments. All the challenge comments were made in response to statements made by defense counsel during his closing argument.
 

 La.C.Cr.P. art. 774 provides that the scope of closing argument:
 

 [SJhall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. The argument shall not appeal to prejudice. The state’s rebuttal shall be confined to answering the argument of the defendant.
 

 Prosecutors may not resort to argument involving personal experience or turn argument into a plebiscite on crime.
 
 State v. Fortune,
 
 2010-0599, p. 8 (La.App. 4 Cir. 12/22/10), 54 So.3d 761, 766;
 
 State v. Jackson,
 
 2008-0286, p. 10 (La.App. 4 Cir. 4/29/09), 11 So.3d 524, 532-533. They prosecutors have wide latitude in choosing closing argument tactics.
 
 State v. Casey,
 
 99-0023, p. 17 (La.1/26/00), 775 So.2d 1022, 1036;
 
 Jackson,
 
 2008-0286, p. 10-11, 11 So.3d 524 at 533. A trial court has broad discretion in controlling the scope of closing arguments.
 
 Casey, supra; State v. Jones,
 
 2010-0018, p. 9 (La.App. 4 Cir. 11/10/10), 51 So.3d 827, 833,
 
 writ denied,
 
 2010-2683 (La.4/25/11), 62 So.3d 85. Even where a prosecutor exceeds the bounds of proper argument, a reviewing court will not reverse a conviction unless thoroughly convinced that the argument influenced the jury and contributed to the verdict.
 
 State v. Wiltz,
 
 2008-1441, p. 6 (La.App. 4 Cir. 12/16/09), 28 So.3d 554, 558,
 
 writ denied,
 
 2010-0103 (La.11/12/10), 49 So.3d 885;
 
 State v. Harvey,
 
 2008-0217, p. 4 (La.App. 4 Cir. 5/13/09), 12 So.3d 496, 499. Even where the prosecutor’s statements are improper, a reviewing court 1 ^should accord credit to the good sense and fair-
 
 *127
 
 mindedness of the jurors who heard the evidence.
 
 Harvey, supra.
 

 The first comment complained of was made in response to defense counsel’s argument that because defendant did everything right on his probation for his prior felony conviction, “the State is asking you to convict him and send him to jail for at least ten years.” During rebuttal the prosecutor stated:
 

 The sentence, you’re the trier of fact, he’s the trier of law. Don’t worry about the sentencing. He’s trying to inflame you. If he doesn’t like it, he can change it.
 

 Defense counsel objected asserting that the prosecutor was telling the jury that the court had more power than it did over the sentence. The trial court denied the objection.
 

 The prosecutor was responding to defense counsel’s statement which was an obvious attempt to sway the jury by highlighting the mandatory ten years minimum sentence upon conviction. Strictly speaking, the prosecutor was in error, as no one had the authority to change the statutory sentence. Nevertheless, considering the strength of the State’s case, and according credit to the good sense and fair-mindedness of the jury, we are not thoroughly convinced this comment influenced the jury and contributed to the guilty verdict.
 

 The next complaint is about comments the prosecutor made during rebuttal concerning a surveillance videotape of part of the encounter between Officer Dupre and defendant. We note that the trial court suppressed a videotape prior to trial. Defense counsel brought up the issue in his closing argument, stating that Officer Dupre had video footage that could have shown exactly what happened. The prosecutor objected, because the State had not been allowed to go into the videotape issue and talk about what was on it. The court essentially sustained that ^objection, telling defense counsel to avoid it, but defense counsel immediately commented to the jury that the videotape was broken, and that the officer’s laptop computer, which also contained the video, was broken. “Convenient,” said defense counsel.
 

 During his rebuttal argument the prosecutor responded:
 

 Let’s talk about some facts. How about a videotape? Boy, I wish I had it. I wish I could tell you what was on it, but I can’t. That camera, that camera wasn’t the one that was used. How come they didn’t ask any testimony [sic] — that I couldn’t do, that he could. How come he didn’t ask any questions? The policeman was on the stand. What video camera was the tape in? Because then he can’t make that argument.
 

 Defense counsel objected on the ground that this was a comment on facts not in evidence, but he did not move for a mistrial.
 

 These comments were the State’s attempt to address defendant’s comments concerning the videotape. The case against defendant was simple Officer Dupre observed him with a gun, which he pointed at the officer. The officer chased him and saw him throw something into a drain. When police opened that drain shortly thereafter they found a handgun. Even assuming the prosecutor’s comments regarding the videotape were improper, according credit to the good sense and fair-mindedness of the jury, we are not thoroughly convinced that they influenced the jury and contributed to the guilty verdict.
 

 The next complaint about improper prosecutorial comments elicited two motions for mistrial. During his closing argument defense counsel said:
 

 
 *128
 
 The State could have proved this case but they [sic] chose not to. They [sic] chose not to by not having any non-police witnesses, not interviewing any of those witnesses, not taking the fingerprints, not giving the video. Those are all reasons to have a reasonable doubt.
 

 | g4On rebuttal, the prosecutor responded: There’s no witness. There is a witness. He’s got a copy of the police report. The witness is not here, won’t come.
 

 Defense counsel objected, claiming: “That’s burden shifting as well as getting past his constitutional rights. He’s trying to tell the jury that he should have testified. I’m asking for a mistrial, Your Hon- or.”
 

 Now defendant argues that his motion for mistrial was made pursuant to La. C.Cr.P. art. 771, which states, in pertinent part:
 

 In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
 

 (1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
 

 [[Image here]]
 

 In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
 

 Mistrial is a drastic remedy which should only be declared upon a clear showing of prejudice by the defendant.
 
 State v. Leonard,
 
 2005-1382, p. 11 (La.6/16/06), 932 So.2d 660, 667. The mere possibility of prejudice is insufficient to warrant a mistrial.
 
 Id.
 
 “Mistrial is an extreme remedy and, except for instances in which the mandatory mistrial provisions of La.C.Cr.P. art. 770 are applicable, should only be used when substantial prejudice to the defendant is shown.”
 
 State v. Castleberry,
 
 98-1388, p. 22 (La.4/13/99), 758 So.2d 749, 768. “Mistrial is a drastic remedy, and is warranted only when the defendant has suffered substantial ^prejudice such that he cannot receive a fair trial.”
 
 State v. Wessinger,
 
 98-1234, p. 24 (La.5/28/99), 736 So.2d 162, 183. “The determination of whether actual prejudice has occurred, and thus whether a mistrial is warranted, lies -within the sound discretion of the trial judge, and this decision will not be overturned on appeal absent an abuse of that discretion.”
 
 Id.
 

 The prosecutor’s comment simply pointed out that there was a witness, as reflected by the police report, and that the witness would not testify. The prosecutor was merely answering the criticism from defense counsel that the State chose not to present any non-police witnesses. The remark was not irrelevant or immaterial,
 
 per se,
 
 and since the remedies of La.C.Cr.P. art. 771 — admonition or mistrial — are not even triggered unless it is irrelevant or immaterial, is not even applicable. Further, even assuming it was irrelevant or immaterial we cannot reasonably say that it constituted prejudicial conduct or warranted the drastic remedy of mistrial. The trial court did not abuse its discretion in denying the motion for mistrial.
 

 Finally, in response to defendant’s attack on Officer Dupre’s credibility the prosecutor said later in rebuttal:
 

 The next hoop I have to jump through is this gun. And it’s either you believe the officer or you don’t. I suggest to you
 
 *129
 
 that if they thought that this policeman was a liar as they suggest to you, they should have called him a liar on the stand and let him defend himself. It’s not fair, it’s not right, it’s not manly, whatever word or adjective you want to use, it’s not the way you do business when you’ve got him up here to not ask him the question and then when he’s down there and he can’t defend himself to say you’re a liar. All of the questions that they want you to worry about he could have resolved for you right here and he didn’t.
 

 12BAgain, defendant objected on the basis of burden shifting, and moved for a mistrial.
 

 The prosecutor’s comment was simply directed to rebutting defense counsel’s attack on Officer Dupre’s credibility. There was no burden shifting. We cannot say that this comment was either irrelevant or immaterial, that it improperly created prejudice against defendant, or that it warranted the drastic remedy of mistrial. The trial court did not abuse its discretion in denying the motion for mistrial.
 

 There is no merit to this assignment of error.
 

 ASSIGNMENT OF ERROR NO. 4
 

 In his last assignment of error, defendant argues that the trial court erred in failing to include illegal carrying of weapons in violation of La. R.S. 14:95 as a responsive verdict to possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1.
 

 By written motion on the morning of trial defendant requested that the verdicts of “guilty of illegal carrying of a concealed weapon” and “guilty of attempted illegal carrying of a concealed weapon” be included as lesser included offenses, should the evidence show he concealed on his person the firearm he was alleged to have possessed. At trial he reurged the motion and objected when the trial court denied it, thus preserving the issue of review.
 

 The bill of information charges that Mr. Maxwell:
 

 POSSESSED A FIREARM, TO WIT:HANDGUN [sic], THE SAID ERIC T. MAXWELL HAVING BEEN PREVIOUSLY CONVICTED OF A | ^FELONY, NAMELY: POSSESSION OF CRACK, IN CASE NUMBER 454-397”A” [sic] OF THE ORLEANS PARISH CRIMNAL DISTRICT COURT
 

 The bill of information cites “14:95.1,” which states, in pertinent part:
 

 A. It is unlawful for any person who has been convicted of ... any violation of the Uniform Controlled Dangerous Substances Law which is a felony ... to possess a firearm or carry a concealed weapon, (footnote omitted, emphasis added.)
 

 By using the disjunctive “or”, the statute proscribes two separate and distinct acts by a person previously convicted of an enumerated felony: (1) the possession of a firearm; or (2) the carrying of a concealed weapon.
 

 Defendant was expressly charged with the “possession” proscription. The bill of information is silent as to the concealed weapon aspect of the statute.
 

 The elements of possession of a firearm by a convicted felon are: (1) defendant’s status as a convicted felon; (2) an instrumentality defined as a firearm; and (3) physical and/or constructive possession of the firearm by the defendant.
 
 State v. Graps,
 
 2009-1202, pp. 3-4 (La.App. 4 Cir. 6/23/10), 42 So.3d 1066, 1068;
 
 State v. Husband,
 
 437 So.2d 269, 271 (La.1983).
 

 La. R.S. 14:95 defines illegal carrying of weapons:
 

 
 *130
 
 A. Illegal carrying of weapons is:
 

 (1)The intentional concealment of any firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, on one’s person;
 

 Thus, where the alleged weapon is a firearm, the elements of illegal carrying of a weapon are: (1) intentional concealment; (2)of a firearm; (3) on one’s person.
 

 When a count in a bill of information charges an offense that includes other offenses of which the accused could be convicted, La.C.Cr.P. arts. 814 and 815 128require the court to charge the jury as to the law applicable to each offense. La. C.Cr.P. art. 803. La.C.Cr.P. art. 814(A) sets forth exclusive responsive verdicts for fifty-nine offenses, but it does not list any responsive verdict(s) for the violation of La. R.S. 14:95.1. La.C.Cr.P. art. 815 provides the responsive verdicts for offenses not listed in La.C.Cr.P. art. 814, and states:
 

 In all cases not provided for in Article 814, the following verdicts are responsive:
 

 (1) Guilty;
 

 (2) Guilty of a lesser and included grade of the offense even though the offense charged is a felony, and the lesser offense a misdemeanor; or
 

 (3) Not Guilty.
 

 A lesser and included offense is one in which all of its essential elements are also essential elements of the greater charge, such that evidence sufficient to support a conviction of the charged offense necessarily supports conviction on the lesser offense.
 
 State v. Manning,
 
 2003-1982, p. 65 (La.10/19/04), 885 So.2d 1044, 1101;
 
 State v. Marts,
 
 98-0099, p. 11 (La.App. 4 Cir. 5/31/00), 765 So.2d 438, 444-445. As noted by the Louisiana Supreme Court in
 
 State v. Simmons,
 
 2001-0293 (La.5/14/02), 817 So.2d 16, “Stated another way, ‘if any reasonable state of facts can be imagined wherein the greater offense is committed without the perpetration of the lesser offense, a verdict for the lesser offense cannot be responsive [citations omitted].’ ” 2001-0293 at 4, 817 So.2d at 19.
 

 It is at once apparent that “intentional concealment” is not an element of the offense charged
 
 sub judice.
 
 Thus, evidence sufficient to support a conviction of the greater charged offense does not necessarily support a conviction for illegally carrying weapons (by concealment on one’s person). We find it quite reasonable |29to imagine that a convicted felon could possess a firearm without concealing it. Conversely, we have been unable to discern a set of circumstances where a convicted felon could conceal a firearm on his person without possessing it.
 

 All the essential elements of the lesser offense of illegally carrying weapons by concealment on one’s person are
 
 not
 
 elements of the greater offense of possession of a firearm by a convicted felon. Therefore, illegal carrying of weapons cannot be a lesser and included offense of possession of a firearm by a convicted felon. Accordingly, the trial court properly denied defendant’s request to have it listed as a responsive verdict.
 

 However, defendant cites
 
 State v. Broussard,
 
 99-1054 (La.App. 4 Cir. 5/22/02), 819 So.2d 1141, a prosecution under La. R.S. 14:95.1, where a panel of this court found the evidence insufficient to prove the defendant was the same person who had been previously convicted of a felony. Without any exegesis or discussion that panel concluded:
 

 Therefore, in accordance with La. C.Cr.P. art. 815, we amend the defendant’s conviction to reflect a conviction for the lesser included offense of La. R.S. 14:95, Illegal Carrying of Weapons,
 
 *131
 
 defined in subsection (A)(1) as “the intentional concealment of any firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, on one’s person.”
 

 Broussard,
 
 99-1054 at pp. 7-8, 819 So.2d at 1146.
 

 The facts in
 
 Broussard
 
 were similar to those here such that it cannot be factually distinguished.
 
 [5]
 
 Here, Officer Dupre saw defendant and another take | .^objects from a car and put them in their clothing. After confronting them and ordering them to put their hands on top of the car, the officer exited his car. Defendant began moving his hands and by the time Officer Dupre got around the car, defendant had a gun in his hand. Broussard pulled a gun from underneath his clothing. Thus, any rational trier of fact could have found beyond a reasonable doubt that the elements of illegal carrying a concealed weapon were present in both cases.
 

 Based on our analysis above, though, we find that illegal carrying of weapons, under La. R.S. 14:95(A)(1) is not a lesser and included offense of possession of a firearm by a convicted felon, La. R.S. 14:95.1, because the greater offense can be committed without committing the lesser: Possessing a concealed firearm by a convicted felon does not require any element of concealment. This result is fully consistent with
 
 State v. Tillman
 
 (footnote 5) supra, because in Tillman the defendant was charged with
 
 carrying
 
 a concealed weapon by a convicted felon. We conclude that
 
 Broussard, supra,
 
 is wrongly decided insofar as it suggests otherwise.
 

 Therefore, in accordance with our internal rules we have referred this issue to the Court en banc with a recommendation that
 
 Broussard
 
 be overruled to the extent it held that illegal carrying of a concealed weapon is a lesser and included offense of, and hence a responsive verdict to, possession of a firearm by a convicted felon. The court unanimously agreed with our recommendation. Thus,
 
 Broussard, supra,
 
 is overruled on that issue.
 

 ^CONCLUSION
 

 For the foregoing reasons, defendant’s conviction and sentence are affirmed, and the ease remanded to the trial court for the imposition of a mandatory fine pursuant to La. R.S. 14:95.1(B).
 

 AFFIRMED AND REMANDED.
 

 [1]
 

 .
 
 State v. Maxwell,
 
 2008-1007 (La.App. 4 Cir. 8/19/09), 17 So.3d 505.
 

 [2]
 

 .
 
 State v. Maxwell,
 
 2009-2235 (La.4/16/10), 33 So.3d 155.
 

 [3]
 

 . The State expressly stated that it was using a peremptory challenge to strike black prospective alternate juror Rose Watkins because it wanted the next prospective alternate juror, a female whose grandmother was one of the first policewomen hired by the New Orleans Police Department. That prospective alternate juror was white. As to that action by the State, the trial court stated: "I’m with you.” This clearly was a legitimate race neutral reason.
 

 [4]
 

 . A criminal defendant may not lawfully strike prospective jurors on the basis of race. See La.C.Cr.P. art. 795(C) ("No peremptory challenge made by the state or the defendant shall be based solely upon the race or gender of the juror.");
 
 Georgia v. McCollum,
 
 505 U.S. 42, 59, 112 S.Ct. 2348, 2359, 120 L.Ed.2d 33 (1992)("We hold that the Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges. Accordingly, if the State demonstrates a prima facie case of racial discrimination by the defendants, the defendants must articulate a racially neutral explanation for peremptory challenges.”).
 

 [5]
 

 . In his brief defendant cites Justice Dennis' concurrence in
 
 State v. Tillman,
 
 356 So.2d 1376 (La.1978), to the effect that La. R.S. 14:95 is a lesser and included grade of La. R.S. 14:95.1. However, the defendant there was charged with and convicted of the second proscription of La. R.S. 14:95.1
 
 “carrying
 
 a concealed weapon by a person who has been convicted of simple robbery,” not the offense charged in the instant case. Thus,
 
 Tillman
 
 is not authority for defendant’s position here.